*Fort Detrick/Walter Reed Army Medical Center Housing LLC v. Robert Wynn*, No. 28, September Term, 2025. Opinion by Biran, J.

**UNITED STATES CONSTITUTION – ENCLAVE CLAUSE – ACCEPTANCE OF JURISDICTION BY THE UNITED STATES** – The Enclave Clause of the United States Constitution provides that Congress has the power to "exercise exclusive Legislation … over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings[.]" U.S. CONST. art. I, § 8, cl. 17. For the United States to obtain exclusive jurisdiction over property under the Enclave Clause, three things must occur: (1) the State must consent to the United States' acquisition of the property in question; (2) the State must cede its jurisdiction over the property to the United States; and (3) the United States must indicate its acceptance of the ceded jurisdiction. The Supreme Court of Maryland held that the fact that the United States obtained legal title to the property at issue did not indicate the United States' acceptance of jurisdiction over that property.

**REAL PROPERTY – SUMMARY EJECTMENT ACTION – PROOF OF EXEMPTION FROM LICENSURE** – A landlord that does not possess a required residential rental license may not file a summary ejectment action under Md. Code Ann., Real Prop. ("RP") § 8-401 (1974, 2023 Repl. Vol.) seeking to evict a tenant. Under RP § 8-406, a landlord in a jurisdiction mandating licensure of residential rental property must demonstrate by a preponderance of the evidence at trial in a summary ejectment action that the property listed in the complaint is licensed, exempt from licensure, or unlicensed due to one of several enumerated reasons. The landlord in this case claimed that it was exempt from Montgomery County's rental license regulations because the United States has exclusive jurisdiction under the Enclave Clause over the landlord's apartment complex. The Supreme Court of Maryland held that because the landlord failed to show that the United States has exclusive jurisdiction over the property underneath the apartment complex, the landlord failed to establish that Montgomery County's rental regulations are preempted by the Enclave Clause. Because the landlord failed to meet its burden at trial to show that it is exempt from Montgomery County's license requirements, the District Court should have entered judgment for the tenant.

Circuit Court for Montgomery County
Case No.: C-15-CV-24-003800
Argued: December 5, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 28

September Term, 2025

_____

FORT DETRICK/WALTER REED ARMY
MEDICAL CENTER HOUSING LLC

v.

ROBERT WYNN

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Opinion by Biran, J.

_____

Filed: June 23, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Montgomery County requires that the owner of a residential property located within the County obtain a license before operating the property as rental housing. A landlord that does not possess a required rental license may not file a summary ejectment action in the District Court of Maryland seeking to evict a tenant. This case involves an unlicensed landlord in Montgomery County that filed such an action. The landlord contends that it is exempt from the County's licensure requirement because the property in question is subject to the exclusive jurisdiction of the United States.

Petitioner/Cross-Respondent Fort Detrick/Walter Reed Army Medical Center Housing LLC (the "Landlord") owns and operates Glen Haven Apartments ("Glen Haven"), a multi-family housing complex in Wheaton, Maryland, located on land first acquired by the United States in 1941. Glen Haven was constructed in 2005 as part of the Military Housing Privatization Initiative ("MHPI"), 10 U.S.C. § 2871 *et seq.*, which was enacted to facilitate affordable private housing for servicemembers. Glen Haven's tenants include servicemembers assigned to Walter Reed National Military Medical Center ("Walter Reed") and their families.

Under the terms of the MHPI, the Landlord prioritizes the leasing of units at Glen Haven to servicemembers. However, if there are vacant units at Glen Haven that are not needed by servicemembers, the Landlord may lease them to civilians. Respondent/Cross-Petitioner Robert Wynn was a civilian tenant at Glen Haven. After Mr. Wynn failed to pay rent that was due under his lease, the Landlord filed a summary ejectment action in the District Court of Maryland sitting in Montgomery County, seeking Mr. Wynn's eviction.

Mr. Wynn moved to dismiss the case, based on the Landlord's failure to obtain a rental license. In response, the Landlord claimed that it is exempt from licensure because Glen Haven is located on land covered by Article I, Section 8, clause 17 of the United States Constitution. That relatively obscure provision of the Constitution, which is known as the Enclave Clause, states that Congress has the power to exercise exclusive jurisdiction over all property purchased by the federal government, with the consent of the legislature of the state in which the property is located, for the purpose of erecting forts, magazines, arsenals, dockyards, and other "needful [b]uildings[.]" The Landlord asserted that, because Glen Haven constitutes a "needful" building located within a federal enclave, it is subject to the exclusive jurisdiction of Congress, and the County licensure regulations do not apply.

The District Court ruled that Glen Haven is exempt from licensure and entered an order of summary ejectment against Mr. Wynn. Mr. Wynn appealed to the Circuit Court for Montgomery County, which reversed the judgment of the District Court. The circuit court concluded that Glen Haven is located within a federal enclave, but nevertheless ruled that the Landlord is required to obtain a license with respect to units the Landlord rents to civilians.

The parties filed cross-petitions for certiorari, which we granted to decide whether the Enclave Clause preempts Montgomery County licensure regulations that would otherwise be applicable to Glen Haven and, in particular, to units rented to civilians. After we granted review, the case proceeded down a somewhat long and winding road, as we recount below. The premise upon which the parties litigated the case in the lower courts –

that Glen Haven is located on land that is covered by the Enclave Clause – turned out to be debatable.

It was the Landlord's burden at trial to demonstrate by a preponderance of the evidence that it is exempt from otherwise applicable rental licensing requirements. Because the Landlord did not establish at trial that any portion of Glen Haven is subject to the exclusive jurisdiction of the United States, the Landlord failed to meet its burden. For this reason, we affirm the circuit court's judgment in favor of Mr. Wynn on different grounds.

**I**

**Background**

**A. Glen Haven and the MHPI**

The United States acquired the approximately 20-acre parcel of land upon which Glen Haven sits (the "Property") by condemnation in August 1941, *see United States v. James F. Windham et. al.*, Civil Docket No. 1304 (D. Md. 1941),[1] and has held fee simple title to the Property since that time. In 2004, the Landlord acquired the rights to construct Glen Haven as part of the MHPI. Under the MHPI, private-sector developers and property management companies lease land owned by the United States, and then develop, own, operate, and maintain rental housing units on that land.

The 2004 ground lease agreement between the Landlord and the United States (by the Secretary of the Army) provides that the United States is the sole owner of the Property,

---

[1] We take judicial notice of a map of the Property that is attached to the 1941 condemnation court order. *See* note 7 below. The map states the acreage of the Property as 19.938 acres.

3

while the Landlord owns the approximately 300 housing units and improvements that comprise Glen Haven. Glen Haven provides subsidized family housing for servicemembers assigned to Walter Reed. However, it also advertises and rents units to civilians.

## B. Montgomery County Licensure Requirements

Montgomery County's licensure requirements for residential rental units were enacted initially in 1972. In Montgomery County, "[t]he owner of a dwelling unit must obtain a rental housing license before operating the dwelling unit as rental housing." Montgomery Cnty. Code, art. 3, § 29-16(a). A "Class 1 rental housing license is required for each apartment complex and personal living quarters building, and for each multifamily dwelling unit operated as rental housing." *Id.* § 29-16(c). In general, a Class 1 multi-family rental licensee is assessed an annual fee of "$44.00 per dwelling unit in an apartment complex," subject to annual increase established by regulation. *Id.* § 29-20(a)(1)(A), (d)(1).

## C. Summary Ejectment Actions Under Maryland Law

Maryland law provides a statutory cause of action that a landlord may use to seek repossession of rental property based on a tenant's failure to pay rent. *See* Md. Code Ann., Real Prop. ("RP") § 8-401 (1974, 2023 Repl. Vol.). Commonly referred to as the "summary ejectment statute," RP § 8-401 "empower[s] the court to enter a money judgment for the amount of rent determined to be owing and also to issue an order for the tenant to yield possession of the premises when the jurisdiction over the tenant has been obtained." *Assanah-Carroll v. Law Offs. of Edward J. Maher, P.C.*, 480 Md. 394, 430 (2022) (citation omitted). Summary ejectment proceedings are expedited. *Id.* After a landlord files a

4

complaint for summary ejectment, the District Court issues a summons for the tenant to appear before the court for a trial on the fifth day following the filing of the complaint, and to show cause why the relief sought by the landlord should not be granted. RP § 8-401(b)(4)(i)-(ii). The court is authorized, in "the interests of justice," to adjourn the trial for one day to permit either party to procure necessary witnesses, but the court may not adjourn the trial for longer than one day unless all parties consent. *Id.* § 8-401(e)(1). If judgment is entered in favor of the landlord, the court must order that possession be given to the landlord no more than four days after the trial. *Id.* § 8-401(e)(3).

As we said in *Assanah-Carroll*, a summary ejectment action under RP § 8-401 "is a powerful tool that enables the landlord to enforce [its] contractual right to collect unpaid rent in an efficient and expedient manner." 480 Md. at 431. However, a landlord's right to file this action is "not unfettered." *Id.* Under Maryland common law, a landlord that does not possess a current required license to operate the premises may not initiate a summary ejectment proceeding. *McDaniel v. Baranowski*, 419 Md. 560, 563 (2011). In addition, even if a landlord who lacked a license subsequently obtains one, the now-licensed landlord may not use the courts (including through a summary ejectment action) to recover unpaid rent that is attributable to an unlicensed period. *Assanah-Carroll*, 480 Md. at 440.

In 2023, the General Assembly added section 8-406 to the Real Property Article. That statute requires a landlord in a jurisdiction mandating licensure of residential rental property to provide proof of licensure at trial in certain actions seeking to repossess residential property, including a summary ejectment action. Under § 8-406, on the filing of

a complaint seeking summary ejectment, the landlord "shall plead with supporting facts" that the property at issue is:

> (1) Licensed in compliance with applicable local rental licensing requirements;
>
> (2) Exempt from applicable local rental licensing requirements; or
>
> (3) Unlicensed for reasons described under subsection (c)(1)(iii), (iv), or (v) of this section.

RP § 8-406(b).[2] At trial, the landlord must prove the truth of the assertion it pled under § 8-406(b) in the complaint. That is, the landlord must demonstrate by a preponderance of the evidence that the property listed in the complaint is licensed, exempt from licensure, or unlicensed due to one of the reasons referenced in subsection (c)(1)(iii), (iv), or (v). *Id.* § 8-406(c)(1).

### D. This Case

Mr. Wynn began his tenancy at Glen Haven on December 1, 2022, under the terms of a Resident Responsibility Agreement (the "Lease"). The Lease required Mr. Wynn to pay monthly rent in the amount of $2,630. The Lease did not specify that a particular jurisdiction's laws and regulations would govern the relationship between Mr. Wynn and the Landlord. The Lease likewise was silent concerning an applicable dispute resolution process or venue for such a process.

---

[2] The reasons for the lack of licensure described in subsection (c)(1)(iii), (iv), and (v) involve circumstances where the landlord is not at fault (i.e., the lack of licensure results from a wrongful act of the tenant or is due to an administrative error or omission by the licensing authority) or where the lack of licensure of a single-license multi-family property is attributable to a unit that is not the subject of the action for repossession. *See* RP § 8-406(c)(1)(iii), (iv), & (v).

On February 5, 2024, the Landlord filed a summary ejectment action against Mr. Wynn in the District Court of Maryland sitting in Montgomery County, seeking judgment for possession and unpaid rent. The Landlord alleged that Mr. Wynn failed to pay his monthly rent for the period between October 1, 2023 and January 31, 2024. On the complaint form, the Landlord pled that Glen Haven was exempt from licensure requirements applicable to rental properties.

Mr. Wynn did not dispute his failure to pay rent or the total amount of $10,542 the Landlord alleged as unpaid rent. Instead, he argued that because the Landlord did not possess a residential rental license with respect to Glen Haven for the relevant time period, as required under Montgomery Cnty. Code, art. 3, § 29-16(a), the Landlord could not recover unpaid rent from Mr. Wynn. In response, the Landlord argued that Montgomery County's rental licensure requirements are inapplicable because Glen Haven is located on a federal enclave subject to exclusive federal jurisdiction. The Landlord pointed to a letter from the Montgomery County Department of Housing and Community Affairs ("DHCA"), dated February 15, 2012, which stated that, "due to the nature and operation of Glen Haven…, it is exempt from the [County licensing] requirements[.]"[3]

Based on the DHCA letter, the District Court found that "it's clear that the County had every intention of exempting this project from falling under the provisions as set forth

---

[3] In a February 8, 2012 letter to Associate County Attorney Vickie L. Gaul, counsel for an entity affiliated with the Landlord asserted that Glen Haven should be exempt from Montgomery County's rental licensure requirements due to the U.S. Army's "ownership of title to the underlying ground" as well as the Army's "jurisdictional oversight and control."

under the Housing code." Having concluded that the Landlord is exempt from the County's licensure requirements, the District Court entered an order of summary ejectment and entered judgment for unpaid rent in the amount of $10,542 in favor of the Landlord.

Mr. Wynn timely appealed to the Circuit Court for Montgomery County. The circuit court conducted a record appeal hearing on October 16, 2024. On May 5, 2025, the circuit court issued an Opinion and Order reversing the District Court's ruling.[4] The court concluded that the Landlord is not exempt from Montgomery County's licensure requirements as applied to units leased to civilian tenants. Having found that the Landlord was required to possess a license to be able to collect rent from Mr. Wynn, and there being no dispute that the Landlord lacked such a license, the court vacated the District Court's order of summary ejectment and entry of judgment for unpaid rent. The court entered judgment in favor of Mr. Wynn.

### E. Proceedings in This Court

The Landlord filed a petition for certiorari, asking us to review two questions:

1.  Whether the Circuit Court's Opinion violates the Enclave Clause of the United States Constitution by: (a) subjecting real property within a

---

[4] At the appeal hearing on October 16, 2024, at the suggestion of the circuit court, counsel for the Landlord stated that the Landlord would attempt to obtain a rental license under the Montgomery County Code. Based on that representation, the circuit court did not immediately rule on Mr. Wynn's appeal, and instead set a status hearing for December 2024. The Landlord requested and obtained several postponements of the hearing to continue its licensure efforts. Then, in April 2025, the Landlord filed a motion to dismiss the appeal as moot. The Landlord informed the circuit court that it had filed additional summary ejectment actions against Mr. Wynn in the District Court for his failure to pay rent for the periods between March 1 through April 30, 2024, and June 1 through August 31, 2024. The Landlord apprised the circuit court that it was granted judgment for possession in both of these subsequently filed cases. Although Mr. Wynn did not appeal those judgments, the circuit court denied the Landlord's motion to dismiss.

federal enclave to local regulation and fees based on the military status of its tenants, rather than the important federal purpose for which the property was initially constructed and is being operated; and (b) imposing local regulations on Petitioner that are inconsistent with federal law governing management of the property within the enclave.

2. Whether the local licensure regulations of the Code imposed by the Circuit Court are preempted by 10 U.S.C. § 2871, *et. seq.* pursuant to Article VI, Clause 2 of the United States Constitution (the "Supremacy Clause").

Mr. Wynn filed a conditional cross-petition for certiorari. He also requested that we review two questions:

1. Whether a private, for-profit residential housing provider open to civilians is exempt from local rental licensure requirements under the Enclave Clause of the U.S. Constitution, U.S. CONST. art. I, § 8, cl. 17 by virtue of the ground lease between the provider and the U.S. Army?

2. If not, whether the licensure requirement applies to the property as a whole or to individual units rented by civilians at any given time?

We granted both petitions, *Fort Detrick/Walter Reed Army Med. Hous., LLC v. Wynn*, 492 Md. 382 (2025), and agreed to review a single reformulated question:

Does the Enclave Clause of the United States Constitution preempt County licensure regulations applicable to: (a) the petitioner's entire apartment complex; or (b) if not, units rented to civilians?

The parties filed briefs in due course. Two days before the scheduled oral argument, the Court by letter alerted the parties' counsel to a document issued by the United States General Services Administration in 1964 titled "Inventory Report on Jurisdictional Status of Federal Areas within the States As of June 30, 1962" (the "Inventory Report").[5] The

---

[5] Relevant pages of the Inventory Report are attached to this opinion as an Appendix. A full copy of the Inventory Report may be reviewed at https://perma.cc/H6VK-7J49. All highlighting and handwritten notations contained in the Inventory Report were already in the document when the Court first accessed it online.

9

Court's letter noted that the Inventory Report includes a listing that seemingly refers to the Property. The listing is for a parcel located in Montgomery County, Maryland, with the description "REED WALTER AMC GLENHAV." *See* App., Inventory Rep. at 343. The listing states that the acquisition year for the parcel was 1947, and its acreage to the nearest tenth is 20.0. *Id.* In addition, the Court's letter to counsel stated that the Inventory Report categorizes the jurisdictional status of the Property as "proprietorial interest only," and defines that term as "those instances wherein the Federal Government has acquired some right or title to an area in a State, but has not obtained any measure of the State's authority over the area."[6]

The Court's letter requested that counsel "be prepared at oral argument to address: (1) whether the Court may take judicial notice of information included in the Inventory [Report]; and (2) the relevance of that information to the issues presented in this appeal." On December 4, 2025, the Landlord filed a Motion to Take Judicial Notice of Condemnation Proceedings in the United States District Court for the District of Maryland.

---

[6] The Inventory Report's definition of "proprietorial interest only" also states that "[i]n applying this definition, recognition should be given to the fact that the United States, by virtue of its functions and authority under various provisions of the Constitution, has many powers and immunities not possessed by ordinary landholders with respect to areas in which it acquires an interest, and of the further fact that all its properties and functions are held or performed in a governmental rather than a proprietary capacity." *See* chart on unnumbered page of the Inventory Report (seventh page of the excerpt included in the Appendix). One such power uniquely possessed by the United States can be found in the Property Clause of the Constitution, which provides that "Congress shall have Power to … make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States[.]" *See* U.S. CONST. art. IV, § 3, cl. 2; *see also United States v. Gabrion*, 517 F.3d 839, 846-47 (6th Cir. 2008) (the federal government holds authority over its property beyond that of an ordinary proprietor even if it expressly declined a state's cession of jurisdiction at the time of acquisition).

In that motion, in addition to requesting that this Court take judicial notice of several documents from the 1941 condemnation proceeding that were attached to the motion as exhibits, the Landlord stated that it had no objection to the Court taking judicial notice of the Inventory Report.[7] The parties presented oral arguments the next day.

On December 9, 2025, the Court issued an order for supplemental briefing. The Order recited that "[i]t has come to the attention of the Court that a document titled 'Suburbanization Historic Context and Survey Methodology, I-495/I-95 Capital Beltway Corridor Transportation Study, Montgomery and Prince George's Counties, Maryland' was prepared for the Maryland Department of Transportation State Highway Administration … in November 1999 ('the Study')." The Order further stated that, according to the Study, the Glen Haven subdivision "first appeared on planning maps in 1944," and that "[b]eginning in 1947, the Army maintained this group of houses for personnel at the Walter Reed Army Hospital Annex …." We requested supplemental briefing on two questions:

1. In light of information in the "Inventory Report on Jurisdictional Status of Federal Areas Within the States As of June 30, 1962" ("the Inventory") and the Study, whether the United States Army first maintained residential housing buildings at the Glen Haven site in 1947 and whether under Md. Code Ann., Gen. Provisions § 6-201 residential housing buildings built at the site in 1947 or thereafter constitute property acquired by the United States or a unit of the United States after May 31, 1943, that the State of Maryland has reserved its jurisdiction and authority over.

---

[7] By separate Order, we have granted the Landlord's Motion to Take Judicial Notice of Condemnation Proceedings in the United States District Court for the District of Maryland.

2. If the property at issue is located within a federal enclave under Article I, Section 8 of the United States Constitution (the "Enclave Clause") and if the Court determines, as argued by Petitioner, that "only state and local laws existing at the time of the federal government's acquisition of the land underlying Glen Haven continue to remain enforceable[,]" (*see* Brief of Petitioner at 8), what Maryland statute, if any, applied to Petitioner's summary ejectment action and how would such statute apply in today's judicial structure?"

The parties subsequently submitted supplemental briefs and supplemental response briefs.

**II**

**Standard of Review**

The questions we must decide in this appeal are ones of law. Therefore, our review is de novo. *See, e.g.*, *Balt. Police Dep't v. Open Just. Balt.*, 485 Md. 605, 644-45 (2023).

**III**

**Discussion**

In the lower courts and in their initial briefs filed in this Court, the parties agreed that the Property is covered by the Enclave Clause. The Landlord argued that the Enclave Clause preempts the licensing requirements of the County Code as applied to the entirety of Glen Haven. Mr. Wynn contended that, notwithstanding the Property's status as a federal enclave, the Enclave Clause does not apply to Glen Haven because it is used solely for private rental housing. In addition, Mr. Wynn asserted that the Landlord waived whatever preemptive status would otherwise apply to Glen Haven once it invoked the summary ejectment procedure available under Maryland law.

In its supplemental briefs, the Landlord adheres to its argument that the Enclave Clause applies to the Property. Mr. Wynn is less convinced of that point, given the

information contained in the Inventory Report. Regardless of the status of the Property as a federal enclave, Mr. Wynn continues to assert that the Enclave Clause does not preempt the County's licensure regulations as applied to rental units that are located on the Property.

We need not address the arguments that Mr. Wynn has raised concerning the application of the Enclave Clause to Glen Haven itself. We hold that the Landlord did not establish that the United States accepted exclusive federal jurisdiction over the Property. Thus, there is no basis to conclude that the Enclave Clause applies to Glen Haven and, consequently, that Montgomery County lacks legislative jurisdiction over Glen Haven. It follows that the Landlord failed to meet its burden at trial to demonstrate by a preponderance of the evidence that it is exempt from licensure.

## A. The Requirements for the Federal Government's Acquisition of Jurisdiction Over Property in Maryland in 1941

### *Federal Law*

"The power of the federal government to *acquire* land within a state, either by purchase or condemnation, is well established." *United States v. Davis*, 726 F.3d 357, 363 (2d Cir. 2013) (internal quotation marks and citation omitted) (emphasis in original). However, the federal government's acquisition of *jurisdiction* over land does not necessarily flow from its acquisition of title. Whether the United States is deemed to have acquired jurisdiction over acquired land involves a complicated and somewhat counterintuitive process. To understand that process – and specifically, how the process worked at the time the federal government obtained title to the Property – we begin with the Enclave Clause itself.

13

The Enclave Clause provides that Congress has the power to "exercise exclusive Legislation … over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings[.]" U.S. CONST. art. I, § 8, cl. 17. As relevant here, the plain language of the Enclave Clause seems to condition the exercise of exclusive federal jurisdiction[8] on one event only: the State's consent to the federal acquisition of land within the State's boundaries.[9] Indeed, until the twentieth century, the Enclave Clause was understood to mean that when the federal government purchases land with the consent of the State for the purpose of building forts, magazines, arsenals, dockyards, and other "needful" buildings, exclusive federal jurisdiction over the acquired land is automatic. *See Surplus Trading Co. v. Cook*, 281 U.S. 647, 652 (1930) ("The question is not an open one. It long has been settled that, where lands for … a purpose [referenced in the Enclave Clause] are purchased by the United States with the consent of the state Legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction.").

---

[8] The phrase "exclusive Legislation" as used in the Enclave Clause means exclusive jurisdiction. *See James v. Dravo Contracting Co.*, 302 U.S. 134, 141 (1937).

[9] The eminent domain power of the United States allows it to acquire title to property necessary for the performance of governmental functions without the consent of the state where the property is located. *See Kohl v. United States*, 91 U.S. 367, 371-72 (1875). If land is acquired without consent of the state, the United States does not acquire any jurisdiction over the land by virtue of its proprietorship. *See Dravo Contracting*, 302 U.S. at 141-42.

14

However, in 1937, the United States Supreme Court held in *James v. Dravo Contracting Company* that a state may condition its consent to the federal government's acquisition of title to property within the state upon the state's retention of jurisdiction over the property, provided that such retention of jurisdiction is "consistent with the governmental purposes for which the property was acquired." 302 U.S. 134, 147 (1937). The Court also observed that the federal government might not want in every case to obtain exclusive federal jurisdiction over acquired land:

> As the Solicitor General has pointed out, a transfer of legislative jurisdiction carries with it not only benefits, but obligations, and it may be highly desirable, in the interest both of the national government and of the state, that the latter should not be entirely ousted of its jurisdiction. The possible importance of reserving to the state jurisdiction for local purposes which involve no interference with the performance of governmental functions is becoming more and more clear as the activities of the government expand and large areas within the states are acquired.

*Id.* at 148. Thus, the Court summed up, "[t]here appears to be no reason why the United States should be compelled to accept exclusive jurisdiction or the state be compelled to grant it in giving its consent to purchases." *Id.*

Seemingly responding to the Court's comments in *Dravo Contracting*, Congress amended 40 U.S.C. § 255 in 1940 to provide that, "[n]otwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it *shall not be required*[.]" *Id.* (emphasis added). The statute provided that the extent to which the United States obtains jurisdiction over acquired land depends on the type of jurisdiction consented to or ceded by the State:

15

> [T]he head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, *consent to or cession of such jurisdiction, exclusive or partial*, not theretofore obtained, over any such lands or interests as he may deem desirable[.]

*Id.* (emphasis added). If a state consented to the United States' acquisition of property located in the state, and if the state ceded jurisdiction over that property to the United States, there was still another step that the federal government had to take to actually acquire that jurisdiction. An authorized officer of the government had to "indicate *acceptance* of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated." *Id.* (emphasis added). Thus, as of 1940, United States agencies and authorities were required to "accept exclusive or partial jurisdiction over lands acquired by the United States by filing a notice with the Governor of the state [in] which the land is located or by taking other similar appropriate action." *Adams v. United States*, 319 U.S. 312, 313 (1943); *United States v. Cassidy*, 571 F.2d 534, 536 (10th Cir. 1978) ("As to lands acquired by the United States after 1940, it has been held that the United States does not acquire jurisdiction over lands acquired by it unless it gives notice of acceptance.").

The 1940 amendment also provided that "[u]nless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be *conclusively presumed* that no such jurisdiction has been accepted." *Id.* (emphasis

16

added).[10] In other words, the acquisition of title to property with the consent of the State and the State's accompanying cession of jurisdiction over that property, without an additional qualifying act of acceptance of jurisdiction, could not be deemed to give rise to federal jurisdiction over the property. This reversed the previously longstanding understanding that the federal government's acquisition of title to land automatically vested exclusive legislative jurisdiction over that land in the United States.

*Maryland Law*

Many years before Congress amended 40 U.S.C. § 255 in 1940, the General Assembly enacted a series of statutes concerning the federal government's acquisition of land and acquisition of jurisdiction over that land within Maryland. These provisions were

---

[10] The relevant portion of 40 U.S.C. § 255 has since been amended and recodified seemingly without substantive change. It currently provides:

> (a) EXCLUSIVE JURISDICTION NOT REQUIRED.–It is not required that the Federal Government obtain exclusive jurisdiction in the United States over land or an interest in land it acquires.
> (b) ACQUISITION AND ACCEPTANCE OF JURISDICTION.–When the head of a department, agency, or independent establishment of the Government, or other authorized officer of the department, agency, or independent establishment, considers it desirable, that individual may accept or secure, from the State in which land or an interest in land that is under the immediate jurisdiction, custody, or control of the individual is situated, consent to, or cession of, any jurisdiction over the land or interest not previously obtained. The individual shall indicate acceptance of jurisdiction on behalf of the Government by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated.
> (c) PRESUMPTION.–It is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction over land as provided in this section.

40 U.S.C. § 3112 (effective Aug. 21, 2002).

17

contained in the since-repealed Article 96 of the Maryland Code. Many of these statutes referenced the Enclave Clause. For example, Article 96, § 1 provided that "[t]he consent of the State is given to the purchase by the government of the United States … [of land] … for the purpose of erecting thereon light-houses, beacons and other aids to navigation; … the consent herein given being in accordance with the seventeenth clause of the eighth section of the first article of the constitution of the United States[]." Md. Code Ann., Art. 96, § 1 (1939).[11] This provision was originally enacted in 1874. *See* 1874 Md. Laws 274 (ch. 193).

Sections 31, 32, and 33 of Article 96 were broadly worded provisions that governed acquisitions of land in the State that the federal government required as "sites for custom houses, courthouses, postoffices, arsenals or other public buildings whatever, or for any other purposes of the government." Art. 96, § 31 (1939). Section 31 stated that the State's "consent … is hereby given in accordance with [the Enclave Clause] to the acquisition by

---

[11] As of 1941, sections 1 through 17 of Article 96 concerned land acquired for the construction of lighthouses, beacons, and other aids to navigation. Other sections of Article 96 concerned the federal government's acquisition of lands for other specific purposes. Sections 19 through 21 spelled out requirements for land acquired for the erection of "forts, magazines, arsenals, coast defences or other fortifications"; sections 22 and 23 for "the construction of a highway from the city of Washington, District of Columbia, to Gettysburg, State of Pennsylvania"; sections 24 through 26 for the erection of a public building in Laurel, Prince George's County; section 27 for the erection of a public building in Cumberland, Allegany County; section 29 for "all the lands lying under the waters of Carr's creek, in Anne Arundel County" for "a rifle range for the Naval Academy, Annapolis, Maryland"; section 30 for "the cemetery located near Point Lookout, in St. Mary's County"; sections 34 through 35 for "a road or highway from the District of Columbia to Winthrop Post Office, in Charles County"; and section 36 for "a calibration range in the mouth of the Potomac River along the south bank."

the United States by purchase, condemnation or otherwise of any land in this State" that was required for such sites.

Section 32 provided that "[e]xclusive jurisdiction in and over any land so acquired by the United States shall be and the same is hereby ceded to the United States for all purposes except the service upon such sites of all civil and criminal process of the courts of this State," and further provided that "the jurisdiction so ceded shall continue no longer than the said United States shall own such lands."

Section 33 stated that "[t]he jurisdiction ceded shall not vest until the United States shall have acquired the title to said lands by purchase, condemnation or otherwise" and provided for exemption of such lands from State, county, and municipal taxation, assessments, and other charges.

Sections 31, 32, and 33 were originally enacted in 1906. *See* 1906 Md. Laws 1254 (ch. 743). Although Article 96 was eventually repealed, its provisions relating to cession of jurisdiction survive to the extent they are applicable to federal acquisitions that occurred on or before May 31, 1943. *See* Md. Code Ann., Gen. Provisions § 6-201(b) (2014, 2019 Repl. Vol.). Because the circumstances addressed in §§ 32 and 33 occurred with respect to the Property before May 31, 1943, we conclude that the Article 96 provisions are applicable here.[12] However, as discussed below, these Article 96 provisions have no bearing on the United States' acceptance of jurisdiction.

---

[12] Mr. Wynn argues that the listing in the Inventory Report of 1947 as the "date acquired" of the Property means that we ought not apply §§ 32 and 33 to this case. It is unclear why the Inventory Report provides an acquisition date of 1947 for the Property. One possible explanation is that the 1947 date refers to the year when buildings were first

**B. The Landlord Has Not Shown That the United States Accepted Jurisdiction Over the Property As Required By 40 U.S.C. § 255.**

The Landlord argues that the United States acquired exclusive jurisdiction over the Property when it acquired the Property by condemnation in 1941 and caused the judgment of condemnation to be recorded in the land records of Montgomery County in or about January 1942. We disagree.

The Landlord's argument proceeds as follows. First, under Article 96, § 31, the State consented to the United States' acquisition of title to the Property, which provided the State's "consent … in accordance with [the Enclave Clause] to the acquisition by the United States by purchase, condemnation or otherwise of any land in this State" that was required for sites for "any … purposes of government."[13]

Second, under Article 96, § 32, the State ceded exclusive jurisdiction (except as to service of process of Maryland courts) over the Property to the United States. That statute provided that "[e]xclusive jurisdiction in and over any land" acquired by the United States under the terms of § 31 "shall be and the same is hereby ceded to the United States for all purposes except [for service of process]."

---

erected on the Property. Ultimately, the point is moot because the Landlord has not produced evidence that the Property was a federal enclave in 1941-42 or in 1947.

[13] It is undisputed that the United States acquired the Property because it was required for use as a site that would further a governmental purpose. In this regard, we take judicial notice of the Petition for Condemnation that the United States filed in the United States District Court with respect to the Property in 1941. *See* note 7 above. The Petition for Condemnation stated that the United States was taking the Property "in connection with the creation of a site for the construction of housing for persons engaged in national defense activities and their families at or near Forest Glen, in the County of Montgomery, State of Maryland."

Third, under Article 96, § 33, the United States accepted jurisdiction when the judgment of condemnation of the Property was recorded in the Montgomery County land records. Section 33 provided that the jurisdiction ceded under § 32 "shall not vest until the United States shall have acquired the title to said lands by purchase, condemnation or otherwise[.]" The Landlord asserts that the exclusive jurisdiction ceded by the State over the Property vested in the United States with the recording of the judgment of condemnation. According to the Landlord, the vesting of jurisdiction accomplished under the terms of § 33 constituted the United States' acceptance of jurisdiction as required by 40 U.S.C. § 255.

We agree with the Landlord that, under the terms of Article 96, §§ 31 and 32, the State consented to the United States' acquisition of the Property and ceded to the United States all jurisdiction over the Property, except that the State reserved jurisdiction with respect to the service of process. However, we disagree that the recording of the judgment of condemnation indicated the United States' acceptance of the jurisdiction ceded under § 32.

Recall that 40 U.S.C. § 255 provided that the United States could indicate the required acceptance of jurisdiction in one of two ways. An authorized officer of the federal government either could "fil[e] a notice of such acceptance with the Governor of such State" or the authorized officer could indicate acceptance of jurisdiction "in such other manner as may be prescribed by the laws of the State where such lands are situated." 40 U.S.C. § 255 (1940).

21

The Landlord advises us in its Supplemental Brief that it has "found no public record of a formal notice of acceptance sent to Maryland's Governor relating to the Property[.]" However, the Landlord contends that Article 96, § 33 prescribed one "such other manner" by which the United States could indicate acceptance of ceded jurisdiction: the vesting of title that would occur upon the United States "hav[ing] acquired the title to said lands by purchase, condemnation or otherwise[.]"

We disagree. Sections 31 through 33 of Article 96 were enacted before Congress amended 40 U.S.C. § 255 in 1940 and first required the federal government to indicate acceptance of jurisdiction over federally acquired property. None of the relevant provisions of Article 96 mentioned acceptance of jurisdiction by the United States when they were enacted. There is no reason to believe that, at the time the General Assembly enacted § 33 and similar provisions in Article 96, it intended those statutes to provide a method for the United States to indicate acceptance of jurisdiction. This is especially so given that prior to the late 1930s, it was generally presumed that the United States accepted all jurisdiction ceded by the states in conjunction with acquisitions of land within state boundaries. *See Fort Leavenworth R.R. Co. v. Lowe*, 114 U.S. 525, 528 (1885). Rather than addressing the United States' acceptance of jurisdiction, § 33 seems to have been a method to ensure that the United States had clean title to property before the State's cession of its jurisdiction over the property would become effective.

Despite the amendment of 40 U.S.C. § 255 to require the United States to indicate acceptance of jurisdiction, the General Assembly did not amend § 33. We decline to read § 33 as providing a method for the United States to indicate acceptance of jurisdiction,

22

where § 33 was not intended to do so when it was enacted, and the General Assembly made no change to § 33's language after Congress amended 40 U.S.C. § 255. The point of the amendment to § 255 was that the federal government had to do something in addition to obtaining title to land to make clear that it also wanted to acquire legislative jurisdiction over that land. Obtaining legal title was something the federal government would do in the normal course of acquiring a property, whether or not the government also wanted to acquire jurisdiction over the property. Thus, obtaining legal title said nothing about the acceptance of jurisdiction.

Other courts have interpreted statutes containing language similar to §§ 31-33 as we do here. In *Dekalb County, Georgia v. Henry C. Beck Co.*, the Fifth Circuit held that the United States did not accept jurisdiction over land ceded to the United States by the State of Georgia. 382 F.2d 992, 995 (5th Cir. 1967). The Fifth Circuit summarized the Georgia statutes at issue:

> By § 15-301 of the Code of Georgia of 1933 the State of Georgia has given consent to federal acquisition of sites for 'needful buildings.' Sec. 15-302, as amended, expressly cedes jurisdiction to the United States over lands so acquired except that the State retains civil and criminal jurisdiction under certain circumstances and jurisdiction over regulation of public utilities. Sec. 15-303 provides, 'The jurisdiction hereby ceded shall not vest until the United States shall have acquired the title to the said lands by purchase, condemnation or otherwise * * *.'

*Id.* at 994-95 (footnotes omitted). Although § 15-302 expressly ceded jurisdiction to the United States and § 15-303 referred to vesting of jurisdiction at the time the federal government acquires title, the Fifth Circuit held that the United States had not accepted the State's cession of jurisdiction: "In this case the United States has taken no affirmative

23

action to accept jurisdiction over the land. It has done no more than take title by deed." *Id.* at 995.

New Jersey also has a similar series of statutes. N.J.S.A. 52:30-1 provides: "The consent of this state is hereby given, pursuant to the provisions of article one, section eight, paragraph seventeen, of the constitution of the United States, to the acquisition by the United States, by purchase, condemnation or otherwise, of any land within this state, for the erection of dockyards, custom houses, courthouses, post offices or other needful buildings." The statute that immediately follows N.J.S.A. 52:30-1 provides in its entirety:

> Exclusive jurisdiction in and over any land so acquired by the United States is hereby ceded to the United States for all purposes except the service of process issued out of any of the courts of this state in any civil or criminal proceeding.
>
> Such jurisdiction shall not vest until the United States shall have actually acquired ownership of said lands, and shall continue only so long as the United States shall retain ownership of said lands.

N.J.S.A. 52:30-2. Interpreting N.J.S.A. 52:30-2, the Superior Court of New Jersey, Appellate Division, held:

> There is no law in New Jersey setting forth a procedure for acceptance of federal jurisdiction in this context. The cession statute, N.J.S.A. 52:30-2, does no more than cede jurisdiction to the United States for lands it acquires in New Jersey, but neither it nor any other law prescribes an acceptance procedure.… [T]he purpose of 40 U.S.C.A. § 255 was to avoid the federal government having to assume unwanted jurisdiction granted by states' cession acts. The federal statute added the new requirement that the United States affirmatively accept what the state law was ceding to it. Absent formal acceptance by either filing with the Governor or following a procedure mandated by statute, N.J.S.A. 52:30-2 does not confer federal jurisdiction over [the property at issue].

*State v. Vogt*, 776 A.2d 884, 890 (N.J. Super. Ct. App. Div. 2001).

*United States v. Johnson*, 994 F.2d 980 (2d Cir. 1993), upon which the Landlord relies, is distinguishable. There, the federal government's compliance with a New York law satisfied the requirement of indicating acceptance because New York required the United States to take the affirmative step of filing particular documents after it obtained a clear and complete title to the property at issue. *See id.* at 985. Under the New York law, only after the United States complied with this requirement was the Governor of New York authorized to "execute … a deed or release of the state ceding to the United States the jurisdiction" over the property. *Id.* In contrast, Article 96, § 33 required only that the United States acquire title without any additional act that would indicate its intent to accept jurisdiction.

Although we do not base our disposition of the Landlord's Enclave Clause argument on the information contained in the Inventory Report, we note that the Inventory Report supports the conclusion that the federal government did not accept exclusive jurisdiction over the Property after acquiring title in 1941-42. As discussed above, the Inventory Report indicates that the Property's status as of 1962 was "Proprietorial Interest Only." That designation is reserved for "those instances wherein the Federal Government has acquired some right or title to an area in a State, but has not obtained any measure of the State's authority over the area."[14]

The listing table in the Inventory Report also includes a column for "Citation to Legislative Authority," including "State Statute," "Federal Law (Statutes-At-Large)," and

---

[14] *See* chart on unnumbered page of the Inventory Report (seventh page of the excerpt included in the Appendix).

"Acceptance or Recordation Date." *See* App., Inventory Rep. at 343. All entries in this column were left blank with respect to the Property. *Id.* The Inventory Report states that "Acceptance or Recordation Date" represents the date "on which the Federal Government accepted legislative jurisdiction. This date is called for in the case of any acquisition after January 31, 1940, (Section 355, Revised Statutes U.S.) as well as acquisitions prior thereto where recordation or other affirmative act was required by the applicable State Statute."[15]

The lack of evidence of any indication of the United States' acceptance in 1941-42 of the ceded jurisdiction over the Property is consistent with a decision on the part of the United States at that time to maintain only a proprietorial interest in the Property.

We presume that the United States has obtained and exercised legislative jurisdiction over Glen Haven through the MHPI.[16] Any federal jurisdiction that exists over Glen Haven is not the product of the United States having acquired exclusive jurisdiction over the Property in keeping with the Enclave Clause.[17] The Landlord produced no evidence that the United States has ever obtained exclusive jurisdiction over the Property.

---

[15] *See* chart on unnumbered page of the Inventory Report (seventh page of the excerpt included in the Appendix).

[16] *See* note 6 above.

[17] In the District Court, counsel for the Landlord did not mention the Supremacy Clause or make any argument that could be construed as raising obstacle preemption as a basis for Glen Haven's exemption from Montgomery County's licensure regulations. At the hearing on appeal to the circuit court, counsel for the Landlord again did not make any argument under the Supremacy Clause, but rather argued only preemption under the Enclave Clause. Thus, unlike with respect to the Enclave Clause, the Landlord did not attempt to prove in the lower courts that it was exempt from licensure due to obstacle preemption. We did not grant review of the question the Landlord included in its petition for certiorari concerning preemption of the County's licensing laws under the Supremacy

# IV

## Conclusion

The Landlord did not establish at trial or in this Court that the United States accepted exclusive federal jurisdiction over the Property, as required by 40 U.S.C. § 255. Thus, we cannot conclude that the Property is a federal "enclave" subject to the exclusive jurisdiction of the United States. Because the Landlord did not establish that the Property is subject to exclusive federal jurisdiction, it follows that the Landlord also failed to demonstrate that Glen Haven is subject to the exclusive jurisdiction of the United States under the Enclave Clause. This, in turn, means that: (1) the Landlord did not establish that the Enclave Clause preempts Montgomery County's licensure requirements as applied to Glen Haven's rental units; and (2) the Landlord did not meet its burden at trial to demonstrate by a preponderance of the evidence that it is exempt from licensure. That being the case, the District Court should have entered judgment in favor of Mr. Wynn. Although our reasoning differs from that of the circuit court, we affirm its judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONER/CROSS-RESPONDENT.**

---

Clause. For this reason, although the parties discussed obstacle preemption in their briefs, we do not decide whether the MHPI preempts Montgomery County's licensure regulations as applied to Glen Haven.

178
In8

# INVENTORY REPORT
# ON
# JURISDICTIONAL STATUS
# OF FEDERAL AREAS WITHIN
# THE STATES

## As of June 30, 1962



Compiled by
## GENERAL SERVICES ADMINISTRATION

## FOR OFFICIAL USE ONLY

# GENERAL SERVICES ADMINISTRATION



Washington 25, D.C.

SEP 3 1964

The President
The White House

Dear Mr. President:

General Services Administration has completed the second comprehensive inventory of the jurisdictional status of Federal areas within the States. The compilation of this inventory reflects the interest which GSA, together with the Bureau of the Budget and the Department of Justice, have in the progress being made by all Federal agencies in adjusting the legislative status of their properties.

This inventory, which is enclosed herewith, directly complements the Inventory Report on Real Property Owned by the United States Throughout the World, as of June 30, 1962, which was also published by GSA.

The inventory will be made available to Federal agencies and State Governments for use as a ready reference to assist in the solution of jurisdictional status problems and in the development of appropriate remedial legislation. S. 815 and H. R. 4433 pending before Congress would facilitate the adjustment of legislative jurisdiction over Federal areas within the States.

Respectfully yours,

BERNARD L. BOUTIN
Administrator

U. S. DEPT. OF AGRICULTURE
NATIONAL AGRICULTURAL LIBRARY

DEC 1 7 1964

C & R-PREP.

Enclosure

# CONTENTS

Introduction:                                            Page

    1. Authority ------------------------------------- 1

    2. Background ------------------------------------ 1

    3. Objectives ----------------------------------- 2

    4. Source of Data ------------------------------- 4

    5. Scope ---------------------------------------- 4

    6. Areas not Covered ---------------------------- 4

    7. Definitions ---------------------------------- 5

    8. Public Domain -------------------------------- 5

General Services Administration Circular No. 275 ------- 7

Jurisdictional status of Federal land areas by States.

    (See reverse side for State page numbers) ---------

Table 1. Jurisdictional status of Federal land areas in

    United States by agency and bureau ---------------- 893

Table 2. Jurisdictional status of Federal land areas in

    United States by State and total acreage of each

    State --------------------------------------------- 895

Table 3. Jurisdictional status of Federal land areas in

    United States by State and agency ---------------- 897

# STATE PAGE NUMBERS

| STATE | PAGE | STATE | PAGE |
|---|---|---|---|
| Alabama | 19 | Montana | 447 |
| Alaska | 35 | Nebraska | 465 |
| Arizona | 47 | Nevada | 479 |
| Arkansas | 59 | New Hampshire | 487 |
| California | 75 | New Jersey | 493 |
| Colorado | 117 | New Mexico | 507 |
| Connecticut | 131 | New York | 521 |
| Delaware | 139 | North Carolina | 557 |
| Florida | 145 | North Dakota | 579 |
| Georgia | 167 | Ohio | 593 |
| Hawaii | 191 | Oklahoma | 623 |
| Idaho | 197 | Oregon | 641 |
| Illinois | 209 | Pennsylvania | 663 |
| Indiana | 237 | Rhode Island | 689 |
| Iowa | 257 | South Carolina | 695 |
| Kansas | 275 | South Dakota | 707 |
| Kentucky | 291 | Tennessee | 719 |
| Louisiana | 309 | Texas | 741 |
| Maine | 325 | Utah | 783 |
| Maryland | 337 | Vermont | 795 |
| Massachusetts | 351 | Virginia | 801 |
| Michigan | 367 | Washington | 825 |
| Minnesota | 393 | West Virginia | 853 |
| Mississippi | 411 | Wisconsin | 865 |
| Missouri | 427 | Wyoming | 883 |



# KEY TO STATE CODES

| STATE | CODE | STATE | CODE | STATE | CODE |
|-------|------|-------|------|-------|------|
| Alabama | 01 | Kentucky | 16 | North Dakota | 33 |
| Alaska | 50 | Louisiana | 17 | Ohio | 34 |
| Arizona | 02 | Maine | 18 | Oklahoma | 35 |
| Arkansas | 03 | Maryland | 19 | Oregon | 36 |
| California | 04 | Massachusetts | 20 | Pennsylvania | 37 |
| Colorado | 05 | Michigan | 21 | Rhode Island | 38 |
| Connecticut | 06 | Minnesota | 22 | South Carolina | 39 |
| Delaware | 07 | Mississippi | 23 | South Dakota | 40 |
| District of Columbia | 08 | Missouri | 24 | Tennessee | 41 |
| Florida | 09 | Montana | 25 | Texas | 42 |
| Georgia | 10 | Nebraska | 26 | Utah | 43 |
| Hawaii | 51 | Nevada | 27 | Vermont | 44 |
| Idaho | 11 | New Hampshire | 28 | Virginia | 45 |
| Illinois | 12 | New Jersey | 29 | Washington | 46 |
| Indiana | 13 | New Mexico | 30 | West Virginia | 47 |
| Iowa | 14 | New York | 31 | Wisconsin | 48 |
| Kansas | 15 | North Carolina | 32 | Wyoming | 49 |

Properties are listed by state, county, and holding agency. Street addresses are given but cities are identified by code only. City names may be determined from the GSA publication "Geographical Location Codes." A supplement at the end of each state shows the counties covered by each multi-county installation included in the listing, but no breakdown of acreage by county is given.

# LEGISLATIVE JURISDICTION OVER FEDERAL AREAS WITHIN THE STATES

## CODES USED IN TYPE OF JURISDICTION AND CITATION TO LEGISLATIVE AUTHORITY COLUMNS

| CODE | TYPE OF LEGISLATIVE JURISDICTION | CITATION TO LEGISLATIVE AUTHORITY |
|------|----------------------------------|-----------------------------------|
| 1 | Exclusive Legislative Jurisdiction. This term is applied when the Federal Government possesses, by whichever method acquired, all of the authority of the State, and in which the State concerned has not reserved to itself the right to exercise any of the authority concurrently with the United States except the right to serve civil or criminal process in the area for activities which occurred outside the area. | For land areas reported under "Exclusive," "Concurrent," or "Partial" legislative jurisdiction, a general or specific State statute or Federal law (Statutes-at-Law) is cited. |
| 2 | Concurrent Legislative Jurisdiction. This term is applied in those instances wherein in granting to the United States authority which would otherwise amount to exclusive legislative jurisdiction over an area, the State concerned has reserved to itself the right to exercise, concurrently with the United States, all of the same authority. | State Statute. Citations to State laws are in terms of session statutes regardless of whether or not they have been codified. Each citation shows: (1) the year of enactment of the cited statute; (2) the page number of the volume of State laws; and (3) the chapter (or equivalent) number of the State law. |
| 3 | Partial Legislative Jurisdiction. This term is applied in those instances wherein the Federal Government has been granted for exercise by it over an area in a State certain of the State's authority, but where the State concerned has reserved to itself the right to exercise, by itself or concurrently with the United States, other authority constituting more than merely the right to serve civil or criminal process in the area (e.g., the right to tax private property). | Federal Law (Statutes-At-Large) Citations to Federal laws are shown in cases where legislative jurisdiction was obtained by a reservation in the enabling act authorizing Statehood. These citations show volumes and page numbers of the Statutes at Large. |
| 4 | Proprietorial Interest Only. This term is applied to those instances wherein the Federal Government has acquired some right or title to an area in a State, but has not obtained any measure of the State's authority over the area. In applying this definition, recognition should be given to the fact that the United States, by virtue of its functions and authority under various provisions of the Constitution, has many powers and immunities not possessed by ordinary landholders with respect to areas in which it acquires an interest, and of the further fact that all its properties and functions are held or performed in a governmental rather than a proprietary capacity. | Acceptance or Recordation Date. This date represents the month, day, and year on which the Federal Government accepted legislative jurisdiction. This date is called for in the case of any acquisition after January 31, 1940, (Section 355, Revised Statutes U.S.) as well as acquisitions prior thereto where recordation or other affirmative act was required by the applicable State Statute. |
| 5 | Unknown. Land will be reported under this category when there is no data or record to guide the reporting holding agency.<br><br>EXPLANATION:<br>The number (1 through 5) appearing in the Jurisdictional Code column indicates the legislative jurisdiction of the acreage listed on the same line in the Land columns. For example, a number 1 indicates exclusive jurisdiction by the Federal Government over the area shown in the Land columns on the same line. | **ADDITIONAL INFORMATION FOUND IN THE DETAILED LISTING**<br><br>N (negligible) An "N" shown in the Land Area columns indicates less than one tenth (0.1) of an acre.<br>R (reference) An "R" shown in the State Statute columns indicates that additional unpublished data is on file in the Central Office of GSA.<br>X_____ An "X" shown in the Jurisdictional Code columns and/or the Federal Law columns indicates that the propriety of the code and/or the law cited is considered doubtful by the reporting agency.<br><br>These listings have been carefully prepared and checked, but perfection cannot be assured. Users are asked to call to the attention of the Office of Finance and Administration, General Services Administration, Washington 25, D.C., necessary corrections as well as suggestions for alteration in the content or format of the list. |

INVENTORY REPORT ON JURISDICTIONAL
STATUS OF FEDERAL AREAS WITHIN THE
STATES

_____

## 1. Authority

This "Inventory Report on Jurisdictional Status of Federal areas
within the States," as of June 30, 1962, is the second comprehensive
inventory of its nature ever undertaken.  It has been prepared and
issued by General Services Administration pursuant to the author-
ity contained in the Federal Property and Administrative Services
Act of 1949, as amended.

## 2. Background

The compilation of the original inventory as of June 30, 1957,
constituted a step toward fulfilling the hope expressed by the
President in a letter dated April 27, 1956, to the Attorney
General, that General Services Administration establish a central
source of information concerning the legislative jurisdictional
status of Federal properties.

An Inter-agency Committee consisting of representatives of
Department of Justice, Bureau of the Budget, and General Services
Administration was formed to maintain a continuing and concerted
interest in the progress made by Federal agencies in adjusting
the status of their properties.  This Committee requested tha
Administrator of General Services to compile a second inventory
on the jurisdictional status of Federal areas within the States,
as of June 30, 1962.  The Committee deemed the new inventory
necessary in order to refine legal determinations in the original
inventory, as of June 30, 1957, and, further to include data on
Federal holdings in the new States of Alaska and Hawaii as well
as new acquisitions in the other States.

Article I, section 8, clause 17, of the Constitution provides
that the Congress shall have power—

> To exercise exclusive Legislation in all Cases Whatsoever,
> over such District (not exceeding ten Miles square) as may,
> by Cession of particular States, and the Acceptance of Congress,
> become the Seat of the Government of the United States, and to
> exercise like Authority over all Places purchased by the Consent
> of the Legislature of the State in which the Same shall be, for
> the Erection of Forts, Magazines, Arsenals, dock-Yards, and other
> needful Buildings; (Emphasis added.)

1

It is well known that under the first portion of this constitutional provision the Federal Government exercises with respect to the District of Columbia all those powers - judicial, executive, and legislative - which under our Federal-State system of government are ordinarily reserved to the States. It is not so well known that under the second portion of this constitutional provision--the portion that has been emphasized above--the Federal Government has acquired "like Authority" with respect to numerous other areas within the geographical confines of the States and with respect the residents of such areas. These other areas--sometimes called "enclaves"--are, in effect, Federal islands surrounded by State territory. To the extent that jurisdiction thereover has been surrendered to, and accepted by, the Federal Government, the States are deprived of the ordinary authority of a State and cannot, with respect to such Federal enclaves or to their inhabitants, exercise usual State functions. But, while the Congress has legislated complete civil and criminal codes for the District of Columbia and provided the local machinery necessary for the administration and enforcement of those codes, it has legislated little, and provided little by way of local governmental machinery, for such Federal enclaves or for their inhabitants.

Over the years, the peculiar legal status of the Federal enclaves has given rise to many serious problems. The significance of those problems is being magnified as the impact of governmental action on the individual citizen continues to mount. In the past, such problems were handled on a case-to-case basis, In December of 1954, upon the recommendation of the Attorney General and with the sponsorship of the President and the Cabinet, an Interdepartmental Committee was formed to study the entire subject of legislative jurisdiction of the Federal Government over areas within the States and to make recommendations thereon.

The extension of the Federal Government's jurisdiction over lands within the States and over the residents of such lands was slowed down with the removal on February 1, 1940, of the Federal statutory requirement (originally enacted in 1841) that, in the case of purchased land, the consent of the State to such purchase be secured prior to construction of any Federal building thereon. The acquisition of jurisdiction by the Federal Government was further slowed down with respect to newly acquired lands by the findings of the above mentioned Committee. However, there does not now exist any administrative machinery for canceling the legislative jurisdiction previously acquired by the Federal Government from the several states.

### 3. Objectives

The Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States made the following conclusions and recommendations:

2

1.  In the usual case there is an increasing preponderance of disadvantages over advantages as there increases the degree of legislative jurisdiction vested in the United States;

2.  With respect to the large bulk of federally owned or operated real property in the several States and outside of the District of Columbia it is desirable that the Federal Government not receive, or retain, any measure whatever of legislative jurisdiction, but that it hold the installations and areas in a proprietorial interest status only, with legislative jurisdiction remaining in the several States;

3.  It is desirable that in the usual case the Federal Government receive or retain concurrent legislative jurisdiction with respect to Federal installations and areas on which it is necessary that the Federal Government render law enforcement services of a character ordinarily rendered by a State or local government. These installations and areas consist of those which, because of their great size, large population, or remote location, or because of peculiar requirement based on their use, are beyond the capacity of the State or local government to service. The Committee suggests that even in some such instances the receipt or retention by the Federal Government of concurrent legislative jurisdiction can, and in such instances should, be avoided; and

4.  In any instances where an agency may determine the existence of a requirement with respect to a particular installation or area of a legislative jurisdictional status with a measure of exclusivity of jurisdiction in the Federal Government, it would be desirable that the Federal Government in any event not receive or retain with respect to the installation or area any part of the State's jurisdiction with respect to taxation, marriage, divorce, annulment, adoption, commitment of the mentally incompetent, and descent and distribution of property, that the State have concurrent power on such installation or area to enforce the criminal law, that the State also have the power to execute on the installation or area any civil or criminal process, and that residents of such installation or area not be deprived of any civil or political rights.

These recommendations were concurred in by the President in a letter to the Attorney General dated April 27, 1956.

The principal objective of preparing this inventory is to provide a central source of information concerning the legislative status of Federal properties.

3

Another objective is that of providing a means for observing the progress made by all Federal agencies in adjusting the status of their properties in conformity with the recommendations of the above mentioned Interdepartmental Committee. This is in keeping with the President's letter of April 27, 1956, asking that General Services Administration, with the Bureau of the Budget, and the Department of Justice, maintain a continuing and concerted interest in such progress.

## 4. Source of Data

This inventory of jurisdictional status is based upon the determination of status by the various Federal agencies with respect to the areas under their respective control. These agency determinations of jurisdictional status were reported to GSA pursuant to General Services Administration Circular No. 275, dated July 18, 1962, copy of which follows. Data with regard to the jurisdictional status of Federal land were obtained by the agencies, principally from title papers and other basic documents. The determinations are subject to change through the revaluation of information now on hand or upon the basis of additional facts that may become known.

## 5. Scope

This inventory report shows the legislative jurisdictional status as of June 30, 1962, of lands located in each of the 50 States, in which title is vested in the Federal Government or in wholly owned Government corporations. It covers, with respect to those 50 States, the same land areas that are covered by the "Inventory Report of Real Property Owned by the United States Throughout the World," as of the same date. Department of Defense (military functions) reported only summary data for its land holdings in Alaska and Hawaii.

## 6. Areas Not Covered

The whole of the area now constituting the District of Columbia is under the exclusive jurisdiction of the United States. It embraces, except for certain adjustments, the area that was ceded by the State of Maryland to the Federal Government for the purpose of establishing the seat of the Government and accepted by the Federal Government in 1790. The area that was ceded by the State of Virginia for that purpose and likewise accepted was retroceded to that State in 1846. These two areas together approximated the ten miles square that is referred to in the first portion of article I, section 8, clause 17, of the Constitution. However, the District of Columbia, as the seat of the Government, involves special considerations not generally applicable to other Federal areas. Accordingly, the above mentioned Interdepartmental Committee restricted its report to those areas that are covered by the "like Authority" and did not deal with the District of Columbia. The same considerations have led to the exclusion of the District of Columbia from this report.

4

Inasmuch as the legislative jurisdiction involved in this report concerns the authority of the Federal Government in relation to that of a State, this report does not deal with property in the territories or possessions, or in the Commonwealth of Puerto Rico.

## 7. Definitions

Article I, section 8, clause 17, of the Constitution speaks only of exclusive jurisdiction or — to use the exact language — the power to exercise "exclusive Legislation." In the absence of a uniform code of Federal laws for areas to which the Federal Government has acquired such exclusive jurisdiction, the operation of the jurisdiction transferred to the Federal Government with respect to Federal enclaves and their inhabitants varies as between States and even as between areas acquired at different times within a single State. Moreover, the Constitution has been interpreted as permitting the transfer of jurisdiction to the United States to be subject to a continuing jurisdiction of the State either in all, or in certain limited, aspects. In addition, the Federal Government has enacted various statutes to permit the States in certain cases to exercise limited jurisdiction over Federal enclaves and their residents. These factors have led to an almost infinite variety of jurisdictional situations.

For statistical purposes, Federal areas are divided into four categories or, where complete information is lacking, are listed as "unknown." The four categories, and their definitions, are those shown in GSA Circular No. 275 which follows.

It should be borne in mind that, while those definitions are based upon judicial decisions and administrative applications, they do not necessarily coincide with the meanings of the same terms as they are used in particular Federal and State statutes.

## 8. Public Domain

Unlike the inventory of federally owned real property, this inventory has not been compiled on the basis of whether the land is a part of the public domain or is after-acquired land. Nevertheless, an explanation of the special status of public domain lands is warranted. The term "public domain," as it applies to land within a State, refers to those lands which were acquired by the United States prior to the creation of the State and which are still retained by the United States, such as lands acquired by the Federal Government by virtue of the Louisiana Purchase. The term has no application to any land in the original 13 states, or in Texas, which was an independent State prior to its admission to the Union, and at present has only limited application to land in the States

5

created out of the territory that belonged to the original 13 States. "Public domain lands" are to be differentiated from so-called "after-acquired lands," which exist in every State. Much of what was originally public domain is now in private ownership through operation of the homestead laws and other similar laws. Other portions of the public domain have been withdrawn or reserved for military or other public uses.

A State statute providing the Constitutional consent to the purchase of lands by the United States (as opposed to a status directly ceding jurisdiction to the United States) would not operate to vest exclusive jurisdiction in the United States over public domain lands inasmuch as the public domain, by defi-nition, does not embrace land that has been "purchased by the Consent of the Legislature of the State in which the Same shall be." Moreover, in only a few States, such as Arizona, Nevada and Utah, do the direct session statutes of general application provide for exclusive jurisdiction in the United States over public domain land that is reserved for public uses. Also, in only a few cases (such as that of Yellowstone National Park) has exclusive jurisdiction for the United States been reserved in the enabling Act by which the State was created. As indicated above, the statistical aspects of this report do not distinguish between public domain lands and after-acquired lands.

6

July 18, 1962

GENERAL SERVICES ADMINISTRATION CIRCULAR NO. 275

TO:        Heads of Federal Agencies

SUBJECT:   Inventory of Legislative Jurisdiction
           Over Federal Areas Within the States

1. Purpose. This circular prescribes (a) reports necessary for the
   compilation of an inventory of the legislative jurisdiction over
   Federal areas within the States, as of June 30, 1962; and (b) forms
   with detailed instructions for the preparation and submission of
   these inventory reports to the General Services Administration by the
   reporting agencies.

2. Background. In conformance with the President's request of April 27,
   1956, published in Part I of the Report of the Interdepartmental
   Committee for the Study of Jurisdiction Over Federal Areas Within the
   States, an inventory showing the legislative jurisdictional status of
   each Federal installation was compiled, as of June 30, 1957, and a
   summary inventory report prepared and presented to the President on
   November 10, 1959. The summary inventory report was published and
   released to the public December 2, 1959.

   An interagency committee consisting of representatives of Department
   of Justice, Bureau of the Budget, and General Services Administration
   was formed to maintain a continuing and concerted interest in the
   progress made by Federal agencies in adjusting the status of their
   properties. This committee requested the Administrator of General
   Services to compile a current inventory on the Jurisdictional Status
   of Federal Areas Within the States, as of June 30, 1962. The committee
   deems the new inventory necessary in order to refine legal determinations
   in the original inventory and, further, to include data on new Federal
   landholdings and data on the newest States, Alaska and Hawaii.

3. Reporting Agency. A reporting agency, for purposes of this inventory,
   is the same as that used for the inventory of real property owned by
   the United States Government, as defined in GSA Reg. 2-XI-201.01,
   dated November 8, 1960.

7

4. Coverage. The inventory prescribed by this circular shall cover all land located in each of the States, title to which is vested in the United States or in wholly owned Government corporations. The coverage of land for this inventory shall be identical with the inventory of real property owned by the United States, for land in the United States, as prescribed in GSA Reg. 2-XI-201.00 dated November 8, 1960, except that it shall omit land located in the District of Columbia and land held in trust for others.

5. Reports to be Submitted. Each reporting agency shall prepare, in accordance with instructions in attachment 1A, and submit to the General Services Administration, a separate report on GSA Form 1166B, Report of Legislative Jurisdiction Over Federal Areas Within the States (attachment 1), for each federally owned installation in the United States, as of June 30, 1962, (excluding those in the District of Columbia and those held in trust for others).

   Each reporting agency shall also prepare in accordance with instructions in attachment 2A, and submit to the General Services Administration for each bureau or other major organizational unit, a report on GSA Form 1209B, Summary Report - Legislative Jurisdiction Over Federal Areas Within the States (attachment 2). GSA Form 1209B shall also be used for reporting summary data on the nature and number of nonfederally owned lands over which the Federal Government has any legislative jurisdiction. However, nonfederally owned lands in national parks or forests or other similar areas over which the Federal Government has acquired no special jurisdiction from the States shall not be included.

   An original and two copies of each report shall be submitted to the General Services Administration, Office of Finance and Administration, Accounting and Reports Management Division, General Services Building, Washington 25, D. C., not later than January 1, 1963.

6. Optional Reporting Method. Reporting agencies which have electrical accounting machine equipment may make arrangements with the General Services Administration, Office of Financial Management, to furnish detailed machine listings, together with the supporting punch cards, in lieu of GSA Forms 1166B. However, GSA Forms 1209B shall be submitted as prescribed in section 5, above.

7. Supplies of Forms. The June 30, 1962, revision of GSA Forms 1166B and 1209B may be obtained after August 1, 1962, from:

8

General Services Administration Region 3
Office of Regional Finance and Administration
Reproduction and Distribution Division
General Services Regional Office Building
Washington 25, D. C.

8. Agency Liaison. The agency liaison representatives on real property inventories, designated pursuant to GSA Reg. 2-XI-101.06, dated November 8, 1960, shall also serve for purposes of this inventory. If desired, a special agency representative may be designated for purposes of this inventory of legislative jurisdiction over land areas.

When an agency designates a special representative for this inventory, it shall be his responsibility to coordinate all reports with the regular real property liaison representative. The General Services Administration, Office of Finance and Administration, Accounting and Reports Management Division, General Services Building, Washington 25, D. C., shall be advised in writing of the names of all such special liaison representatives or any changes in such designations.

9. Inquiries. For additional information regarding the contents of this circular or any questions or problems relating thereto, agency representatives may communicate with the General Services Administration, Office of Finance and Administration, Accounting and Reports Management Division, Washington 25, D. C., telephone: Government dial code 183, (EXecutive 3-4900), extension 4131.

BERNARD L. BOUTIN
Administrator

Attachments

9

| GENERAL SERVICES ADMINISTRATION REPORT OF LEGISLATIVE JURISDICTION OVER FEDERAL AREAS WITHIN THE STATES (For Instructions see GSA Circular No. 275) | FORM APPROVED BUDGET BUREAU NO. 29-6202 APPROVAL EXPIRES DEC. 31. 1963 | 1. REPORT AS OF June 30, 1962 |
|---|---|---|
| | 2. AGENCY CONTROL NO. | 3. GSA CONTROL NO. |

| 4. NAME OF INSTALLATION (Abbreviate when necessary so as not to exceed 23 type spaces) | 5. REPORTING AGENCY |
|---|---|
| | 6. BUREAU OR OTHER MAJOR ORGANIZATION |

### LOCATION

| 7. STATE | 8. CITY OR TOWN |
|---|---|
| 9. COUNTY | 10. STREET ADDRESS, RFD NO. OR OTHER LOCAL DESIGNATION (Abbreviate when necessary so as not to exceed 23 type spaces) |

| GEOGRAPHICAL CODE ▶ | STATE | CITY | COUNTY | |
|---|---|---|---|---|

### LAND AREAS

| 11. TYPE OF LEGISLATIVE JURISDICTION | | DATE(S) OF LAND ACQUISITION (Year(s) only) 12 | AREA (Acres to nearest tenth) 13 |
|---|---|---|---|
| CODE (A) | DESCRIPTION (B) | | |
| 1 | EXCLUSIVE ................................................ | | |
| 2 | CONCURRENT ................................................ | | |
| 3 | PARTIAL ................................................ | | |
| | PROPRIETORIAL INTEREST ONLY ................................ | | |
| 5 | UNKNOWN ................................................ | | |
| | TOTAL LAND AREA * ▶ | | |

* Must agree with land area for this installation shown in the June 30, 1962 Inventory of Real Property Owned by the United States.

| 14. STATE OR FEDERAL STATUTE (For each type of legislative jurisdiction reported in block 13, above, cite the specific State and/or Federal statute under which the legislative jurisdiction over the land was received.) | | | | | | 15. DATE(S) OF LETTER(S) OF ACCEPTANCE OR OTHER ACTIONS TRANSFERRING LEGISLATIVE JURISDICTION TO THE FEDERAL GOVERNMENT | | |
|---|---|---|---|---|---|---|---|---|
| CODE | STATE STATUTE | | | FEDERAL LAW (Statutes-at-Large) | | MONTH | DAY | YEAR |
| | YEAR OF ENACTMENT | PAGE NO. | CHAPTER NO. | VOLUME NO. | PAGE NO. | | | |
| | | | | | | | | |

| 16. REMARKS (Use reverse if more space is required) |
|---|
| |

| 17. PREPARED BY (Typed name and title) | 18. SIGNATURE | 19. DATE |
|---|---|---|
| | | |

INSTRUCTIONS FOR THE PREPARATION OF GSA FORM 1166B,
REPORT OF LEGISLATIVE JURISDICTION OVER FEDERAL AREAS WITHIN THE STATES

A.  General Instructions.

  1.  Preparation of Reports.  GSA Form 1166B, Report of Legislative
      Jurisdiction Over Federal Areas Within the States, shall be
      prepared by all reporting agencies, as of June 30, 1962, for all
      installations which include land in the United States, except
      for real properties located in the District of Columbia and those
      held in trust.  The coverage of land areas for this inventory shall
      be identical with the inventory of real property owned by the
      United States as prescribed in GSA Reg. 2-XI-201.00, dated November 8,
      1960, except for the exclusions noted above.

  2.  Reporting Agency.  For purposes of this inventory a reporting
      agency shall be the same as that prescribed for the Annual Report
      of Real Property Owned by the United States in GSA Reg. 2-XI-201.01,
      dated November 8, 1960.

B.  Specific Instructions for Preparation of GSA Forms 1166B.

  1.  Agency and Property Identification.

      Blocks 2        Entries in these blocks shall be identical with the
      thru 10.        respective identification data for the installation,
                      as reported in the June 30, 1962, Inventory of Real
                      Property Owned by the United States.

                      If space under Block 9, is insufficient to record
                      all county names applicable to multiple county in-
                      stallations, complete the list of counties under
                      Remarks, Block 16, or on the reverse of the form.

  2.  Land Areas - Type of Legislative Jurisdiction.

      Block 11.       Type of Jurisdiction, Code, and Description.  All
                      land areas in each installation shall be reported,
                      as applicable, for each type of legislative
                      jurisdiction described below.  When portions of an
                      installation are held in more than one status, the
                      acreage held in each status shall be shown as
                      separate line entries on the report for the installation.

Code Description.

1. <u>Exclusive Legislative Jurisdiction.</u> This term is applied when the Federal Government possesses, by whichever method acquired, all of the authority of the State, and in which the State concerned has not reserved to itself the right to exercise any of the authority concurrently with the United States except the right to serve civil or criminal process in the area for activities which occurred outside the area.

2. <u>Concurrent Legislative Jurisdiction.</u> This term is applied in those instances wherein in granting to the United States authority which would otherwise amount to exclusive legislative jurisdiction over an area, the State concerned has reserved to itself the right to exercise, concurrently with the United States, all of the same authority.

3. <u>Partial Legislative Jurisdiction.</u> This term is applied in those instances wherein the Federal Government has been granted for exercise by it over an area in a State certain of the State's authority, but where the State concerned has reserved to itself the right to exercise, by itself or concurrently with the United States, other authority constituting more than merely the right to serve civil or criminal process in the area (e.g., the right to tax private property).

4. <u>Proprietorial Interest Only.</u> This term is applied to those instances wherein the Federal Government has acquired some right of title to an area in a State but has not obtained any measure of the State's authority over the area. In applying this definition, recognition should be given to the fact that the United States, by virtue of its functions and authority under various provisions of the Constitution, has many powers and immunities not possessed by ordinary landholders with respect to areas in which it acquires an interest, and of the further fact that all its properties and functions are held or performed in a governmental rather than a proprietary capacity.

5. <u>Unknown.</u> Land will be reported under this category when there is no data or record to guide the reporting agency.

12

Block 12.    Date(s) of Land Acquisition. Enter the year(s) in which the land was originally acquired by the Federal Government for each type of legislative jurisdiction set forth in Block 11. For public domain land withdrawals, show the year of the Executive order or the public land order as the year of acquisition. If various portions were acquired in different years, indicate the range of years: e.g., 1910-1921.

Block 13.    Land-Area. For each type of legislative jurisdiction set forth in Block 11, enter the total area of the land to the nearest tenth of an acre. The land area reported shall be the total area of the installation without regard to "urban" and "rural" classifications. If acreage to be reported is a whole number, enter "0" to the right of the decimal point; e.g., 10.0. If acreage to be reported is less than a whole number, enter "0" to the left of the decimal point; e.g., 0.4. If acreage to be reported is less than 0.1 of an acre, enter the letter "N" (negligible).

The total acreage reported in Block 13 in this report must be identical with the total of urban and rural land reported for the installation in the June 30, 1962, Inventory of Real Property Owned by the United States.

3.  State or Federal Statute, Letter of Acceptance and Remarks.

Block 14.    Type of Jurisdiction by Code. Identify by code description, using the same code numbers shown in Block 11 (A), each type of legislative jurisdiction reported in Block 13. The proper code shall be used for each statute cited.

State or Federal Statute. For acreage reported under "Exclusive," "Concurrent," or "Partial" legislative jurisdiction in Block 13, cite the general or specific State statute under which each legislative jurisdiction over land was received. Citations to State laws shall be in terms of the session statute regardless of whether or not it has been codified. The citation shall be entered as prescribed under (a) below.

13

Cite the Federal statute, where appropriate, in those cases where legislative jurisdiction was obtained by a reservation in the enabling act authorizing statehood. Citations to Federal laws shall be in terms of Statutes-at-Large as prescribed in (b) below. Federal laws retroceding jurisdiction should be cited in Block 16 and should be in the form prescribed in (b) below.

(a) State Statute. Enter a complete citation, using a maximum of twelve digits, for the applicable State session statute (not the codified form) as follows:

(1) Year of Enactment. Enter the year of enaction of the cited statute. Use four digits; e.g., 1911.

(2) Page Number. Enter the page number of the volume of State laws containing the statute cited. Use four digits; e.g., 0438.

(3) Chapter Number. Enter as appropriate using four digits; e.g., 0029.

(b) Federal Law (Statutes-at-Large). Enter as appropriate complete citation to Statutes-at-Large for the Federal law to be cited. Use a maximum of six digits as follows:

(1) Volume Number. Enter the volume number of Statutes-at-Large containing the cited law. Use two digits; e.g., 13.

(2) Page Number. Enter the page number of the volume where the statute is found. Use four digits; e.g., 2894.

In the event there is a question as to the accuracy of the State or Federal statute cited in Block 14, the reporting agency is requested to note this doubt in Block 16, "Remarks."

14

Block 15. **Date(s) of Letter(s) of Acceptance or Other Actions Transferring Legislative Jurisdiction.**

For acreage reported under "Exclusive," "Concurrent," or "Partial" legislative jurisdiction in Block 13, enter the date the Federal Government accepted the legislative jurisdiction. Enter in the appropriate columns for each type of legislative jurisdiction a complete citation, using eight digits, for the month, day, and year, for the letter or letters of acceptance, or other action (e.g., date of filing with Secretary of State) transferring jurisdiction; e.g., 06-15-1910 for June 15, 1910.

Block 16. **Remarks.** The remarks block should be used to show: (1) any discrepancies between this report and the June 30, 1962, "owned" real property report regarding acquisition dates or total acreage; (2) Federal statutes when the legislative jurisdiction, previously obtained, has been retroceded (see Block (14)); and (3) comments regarding State statutes or Federal law if there is doubt as to propriety; and other remarks which will be beneficial in clarifying the report or in expanding any entries beyond the space provided in the applicable block. Continuations of remarks may be entered on the reverse of the form.

4. **Signature and Date**

Block 17. **Prepared by:** Type in the name and title of the official responsible for the preparation of this report.

Block 18. **Signature:** The official designated in Block 17 shall sign his name in this block.

Block 19. **Date:** Enter date on which the report was prepared.

15

| GENERAL SERVICES ADMINISTRATION **SUMMARY REPORT** LEGISLATIVE JURISDICTION OVER FEDERAL AREAS WITHIN THE STATES *(For Instructions see GSA Circular No. 275)* | FORM APPROVED BUDGET BUREAU NO. 29.6203 APPROVAL EXPIRES DEC. 31. 1963 | 1. SUMMARY REPORT AS OF June 30, 1962 |
|---|---|---|
| | 2. REPORTING AGENCY | |
| | 3. BUREAU OR OTHER MAJOR ORGANIZATION | |

| 4. TOTAL NUMBER OF REPORTS SUMMARIZED *(Enter total number of individual installation reports (GSA Form 1166B) for federally-owned properties submitted by the reporting bureau)* ▶ | |
|---|---|

### SUMMARY OF LAND AREAS

| 5. TYPE OF LEGISLATIVE JURISDICTION | | 6. AREA *(Acres to nearest tenth)* |
|---|---|---|
| CODE (A) | DESCRIPTION (B) | |
| 1 | EXCLUSIVE ................................................ | |
| 2 | CONCURRENT ............................................. | |
| 3 | PARTIAL ................................................... | |
| 4 | PROPRIETORIAL INTEREST ONLY ........................ | |
| 5 | UNKNOWN ................................................ | |
| | TOTAL LAND AREA* ▶ | |

\* ~n 6, above, must be the sum of column 13 for the reports (GSA Form 1166B) summarized.

SLATIVE JURISDICTION OVER NONFEDERALLY-OWNED LAND AREAS *(Indicate the nature and number of nonfederally-owned lands controlled by reporting bureau over which the Federal Government has exclusive, concurrent or partial legislative jurisdiction. Nonfederally-owned lands in which the Federal Government has only a proprietorial interest shall not be reported.)*

8. CHANGES IN LEGISLATIVE JURISDICTION SINCE JUNE 30, 1957

| 9. PREPARED BY *(Typed name and title)* | 10. SIGNATURE | 11. DATE |
|---|---|---|
| | | |

INSTRUCTIONS FOR PREPARATION OF GSA FORM 1209B
SUMMARY REPORT-LEGISLATIVE JURISDICTION OVER FEDERAL AREAS WITHIN THE STATES

A.  General Instructions.  This "Summary Report - Legislative Jurisdiction
    Over Federal Areas Within the States" shall be prepared on GSA Form
    1209B by each reporting agency for each bureau or other major
    organizational unit.

B.  Specific Instructions.

    1.  Agency and Bureau Identification

        Block 2.            Reporting Agency.  Enter in this block the name
                            of the reporting agency, that is, the controlling
                            department, commission, administration, or authority.
                            For example, Department of Commerce, Atomic Energy
                            Commission, Veterans Administration, or Tennessee
                            Valley Authority.

        Block 3.            Bureau or Other Major Organization.  Enter in this
                            block the name of the bureau, or comparable major
                            organizational unit, within the reporting agency.
                            For example, National Bureau of Standards (Commerce),
                            or Bureau of Land Management (Interior).

    2.  Summary Data

        Block 4.            Enter the total number of individual installation
                            reports on GSA Forms 1166B which are summarized on
                            GSA Form 1209B.

        Blocks 5 & 6.      For each type of legislative jurisdiction listed
                            in Block 5, enter in Block 6 the total acreage
                            reported on GSA Forms 1166B for all installations
                            of the bureau or major organizational unit for
                            which this report is submitted.

    3.  Legislative Jurisdiction Over Nonfederally Owned Land Areas

        Block 7.            Indicate the nature and number of nonfederally
                            owned lands controlled by the reporting bureau or
                            major organizational unit over which the Federal
                            Government has legislative jurisdiction.  Examples

17

of such lands are private in-holdings in national parks and land leased to the Federal Government. Nonfederally owned lands in which the Federal Government has only a proprietorial interest shall not be reported.

4. Changes in Legislative Jurisdiction Since June 30, 1957

Block 8.    Identify by GSA control number all installations where the legislative jurisdiction has, in fact, changed since June 30, 1957. Give the reason for the change. Also, similarly identify all installations acquired since June 30, 1957, which carry legislative jurisdiction other than proprietorial interest. Do not list installations when the changes in classification from the June 30, 1957, inventory merely reflect refinements in data.

5. Signature and Date

Block 9.    Prepared by:  Type in the name and title of the official responsible for the preparation of this report.

Block 10.   Signature:  The official designated in Block 9 shall sign his name in this block.

Block 11.   Date:  Enter the date on which the report was signed.

18

| CODE | TYPE OF LEGISLATIVE JURISDICTION | CITATION TO LEGISLATIVE AUTHORITY |
|---|---|---|
| 1 | **Exclusive Legislative Jurisdiction.** This term is applied when the Federal Government possesses, by whichever method acquired, all of the authority of the State, and in which the State concerned has not reserved to itself the right to exercise any of the authority concurrently with the United States except the right to serve civil or criminal process in the area for activities which occurred outside the area. | For land areas reported under "Exclusive," "Concurrent," or "Partial" legislative jurisdiction, a general or specific State statute or Federal law (Statutes-at-Law) is cited. <br><br> State Statute. <br> Citations to State laws are in terms of session statutes regardless of whether or not they have been codified. Each citation shows: (1) the year of enactment of the cited statute; (2) the page number of the volume of State laws; and (3) the chapter (or equivalent) number of the State law. |
| 2 | **Concurrent Legislative Jurisdiction.** This term is applied in those instances wherein in granting to the United States authority which would otherwise amount to exclusive legislative jurisdiction over an area, the State concerned has reserved to itself the right to exercise, concurrently with the United States, all of the same authority. | |
| 3 | **Partial Legislative Jurisdiction.** This term is applied in those instances wherein the Federal Government has been granted for exercise by it over an area in a State certain of the State's authority, but where the State concerned has reserved to itself the right to exercise, by itself or concurrently with the United States, other authority constituting more than merely the right to serve civil or criminal process in the area (e.g., the right to tax private property). | Federal Law (Statutes-At-Large) <br> Citations to Federal laws are shown in cases where legislative jurisdiction was obtained by a reservation in the enabling act authorizing Statehood. These citations show volumes and page numbers of the Statutes at Large. <br><br> Acceptance or Recordation Date. <br> This date represents the month, day, and year on which the Federal Government accepted legislative jurisdiction. This date is called for in the case of any acquisition after January 31, 1940, (Section 355, Revised Statutes U.S.) as well as acquisitions prior thereto where recordation or other affirmative act was required by the applicable State Statute. |
| 4 | **Proprietorial Interest Only.** This term is applied to those instances wherein the Federal Government has acquired some right or title to an area in a State, but has not obtained any measure of the State's authority over the area. In applying this definition, recognition should be given to the fact that the United States, by virtue of its functions and authority under various provisions of the Constitution, has many powers and immunities not possessed by ordinary landholders with respect to areas in which it acquires an interest, and of the further fact that all its properties and functions are held or performed in a governmental rather than a proprietary capacity. | *ADDITIONAL INFORMATION FOUND IN THE DETAILED LISTING* <br><br> N (negligible) An "N" shown in the Land Area columns indicates less than one tenth (0.1) of an acre. <br> R (reference) An "R" shown in the State Statute columns indicates that additional unpublished data is on file in the Central Office of GSA. <br> X_____ An "X" shown in the Jurisdictional Code columns and/or the Federal Law columns indicates that the propriety of the code and/or the law cited is considered doubtful by the _____ting agency. |
| 5 | **Unknown.** Land will be reported under this category when there is no data or record to guide the reporting holding agency. <br><br> EXPLANATION: <br> The number (1 through 5) appearing in the Jurisdictional Code column indicates the legislative jurisdiction of the acreage listed on the same line in the Land columns. For example, a number 1 indicates exclusive jurisdiction by the Federal Government over the area shown in the Land columns on the same line. | These listings have been carefully prepared and checked, but perfection cannot be assured. Users are asked to call to the attention of the Office of Finance and Administration, General Services Administration, Washington 25, D.C., necessary corrections as well as suggestions for alteration in the content or format of the list. |

# COUNTY CODES

| NAME | CODES | | |
|------|-------|---|--------|
| | STATE | | COUNTY |
| MARYLAND | 19 | | |
| | | | |
| INDEPENDENT CITY | | | 000 |
| ALLEGANY | | | 001 |
| ANNE ARUNDEL | | | 003 |
| BALTIMORE | | | 005 |
| CALVERT | | | 009 |
| | | | |
| CAROLINE | | | 011 |
| CARROLL | | | 013 |
| CECIL | | | 015 |
| CHARLES | | | 017 |
| DORCHESTER | | | 019 |
| | | | |
| FREDERICK | | | 021 |
| GARRETT | | | 023 |
| HARFORD | | | 025 |
| HOWARD | | | 027 |
| KENT | | | 029 |
| | | | |
| MONTGOMERY | | | 031 |
| PRINCE GEORGES | | | 033 |
| QUEEN ANNES | | | 035 |
| ST MARYS | | | 037 |
| SOMERSET | | | 039 |
| | | | |
| TALBOT | | | 041 |
| WASHINGTON | | | 043 |
| WICOMICO | | | 045 |
| WORCESTER | | | 047 |

| GSA CONTROL NO AGENCY NO | INSTALLATION | STATE | CITY | COUNTY | DESCRIPTION | JURISDICTIONAL CODE | DATES ACQUIRED FROM | TO | LAND AREA ACRES TO NEAREST TENTH | STATE STATUTE YEAR OF ENACTMENT | PAGE NO | CHAPTER NO | FEDERAL LAW VOLUME NO | PAGE NO | ACCEPTANCE MO | DAY | YEAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | MARYLAND | ● | | | | | | | | | | | |
| | | | | | BALTIMORE - CITY | | | | | | | | | | | | |
| | | | | | COMMERCE | | | | | | | | | | | | |
| | | | | | MARITIME ADMINISTRATION | | | | | | | | | | | | |
| 1313 | 05153 | 19 | 0050 | 000 | BALTIMORE WAREHOUSE 4501 CURTIS AVENUE | 4 | 1945 | | 33.0 | | | | | | | | |
| | | | | | INTERIOR | | | | | | | | | | | | |
| | | | | | NATIONAL PARK SERVICE | | | | | | | | | | | | |
| 1417 | 07013 | 19 | 0050 | 000 | FORT MCHENRY NAT MON | 1 | 1795 | 1836 | 43.3 | 1816 1838 | | 0065 0279 | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | NAVY | | | | | | | | | | | | |
| 1700 | 22436 | 19 | 0050 | 000 | BETHLEHEM STEEL CO | 4 | 1942 | | 6.0 | | | | | | | | |
| 1700 | 22526 | 19 | 0050 | 000 | RESERVE TRAINING CENTER | 1 | 1800 | | 4.0 | 1816 | | | | | | | |
| 1700 | 24171 | 19 | 0050 | 000 | R AND R DIST HDQTRS | 4 | 1957 | | 9.0 | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 04091 | 19 | 0050 | 000 | P O PARCEL POST STATION 1501 ST PAUL ST | 2 | 1944 | | 2.6 | 1939 1943 | CODE | 0687 | | | 02 | 01 | 1945 |
| | | | | | TREASURY | | | | | | | | | | | | |
| | | | | | COAST GUARD | | | | | | | | | | | | |
| 2023 | 07844 | 19 | 0050 | 000 | U S COAST GUARD YARD | 1 | 1906 | | 65.0 | 1906 | 1254 | 0743 | | | | | |
| 2023 | 07844 | 19 | 0050 | 000 | | 4 | 1942 | 1954 | 48.2 | | | | | | | | |
| 2023 | C3255 | 19 | 0050 | 000 | DEPOT BALTIMORE | 3 | 1804 | | 5.0 | 1902 | 0364 | 0263 | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | ARMY | | | | | | | | | | | | |
| 2100 | 20059 | 19 | 0050 | 000 | BALTIMORE NATL CEMETERY | 1 | 1936 | | 72.0 | 1906 | 1254 | 0743 | | | | | |
| 2100 | 20061 | 19 | 0050 | 000 | USAR CTR BALTO SHERIDAN | 4 | 1953 | | 4.0 | | | | | | | | |
| 2100 | 20419 | 19 | 0050 | 000 | HOLABIRD FORT | 1 | 1917 | 1943 | 365.8 | 1906 1906 | 1254 1254 | 0743 0743 | | | 04 04 | 25 22 | 1942 1943 |
| 2100 | 20419 | 19 | 0050 | 000 | | 4 | 1954 | | .2 | | | | | | | | |
| 2100 | 20532 | 19 | 0050 | 000 | LOUDON PARK NATL CEMETE | 1 | 1874 | 1903 | 6.0 | 1906 | 1254 | 0743 | | | | | |
| 2100 | 20913 | 19 | 0050 | 000 | USAR CTR BALTO PULASKI | 1 | 1942 | | 1.0 | 1906 | 1254 | 0743 | | | 04 | 22 | 1943 |
| | | | | | VETERANS ADMINISTRATION | | | | | | | | | | | | |
| 3600 | 07273 | 19 | 0050 | 000 | VA HOSPITAL 3900 LOCH RAVEN BLVD | 1 | 1947 | | 15.0 | 1949 | 0894 | 0360 | | | 05 | 09 | 1949 |
| | | | | | GENERAL SERVICES ADMIN | | | | | | | | | | | | |
| | | | | | CENTRAL OFFICE | | | | | | | | | | | | |
| 4700 | 11192 | 19 | 0050 | 000 | OASI BUILDING GWYNNOAK & SECURITY | 2 | 1954 | 1962 | 89.1 | 1951 | CODE | 0016 | | | | | |
| | | | | | REGION # 3 WASHINGTON | | | | | | | | | | | | |
| 4703 | 03974 | 19 | 0050 | 000 | PO & COURT HOUSE FAYETTE & CALVERT | 1 | 1879 | | 1.3 | 1880 | 0006 | 0002 | | | | | |
| 4703 | 04032 | 19 | 0050 | 000 | APPRIASERS STORES 103 S GAY ST | 1 | 1932 | | .2 | 1924 | CODE | 3133 | | | | | |
| 4703 | 04032 | 19 | 0050 | 000 | | 4 | 1833 | | .2 | | | | | | | | |
| 4703 | 04033 | 19 | 0050 | 000 | CALVERT BLDG ST PAUL & FAYETTE | 4 | 1946 | | .3 | | | | | | | | |
| 4703 | 04040 | 19 | 0050 | 000 | CUSTOM HOUSE WATER & LOMBARD ST | 1 | 1817 | 1938 | 1.3 | 1856 | R | 0176 | | | | | |
| 4703 | 04089 | 19 | 0050 | 000 | MCCAULEY & MFGRS BLDG 400 E LOMBARD ST | 1 | 1940 | | .3 | 1924 | CODE | 3133 | | | 09 | 14 | 1942 |

337

| AGENCY BUREAU | INSTAL-LATION | STATE | CITY | COUNTY | DESCRIPTION | JURISDICTIONAL CODE | FROM | TO | ACRES · TO NEAREST TENTH | YEAR OF ENACTMENT | PAGE NO. | CHAPTER NO. | VOLUME NO. | PAGE NO. | MO. | DAY | YEAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | ◆ | 1924 | | 3133 | | | 10 | 08 | 1951 |
| | | | | | HEALTH ED AND WELFARE | | | | | | | | | | | | |
| | | | | | PUBLIC HEALTH SERVICE | | | | | | | | | | | | |
| 7511 | 04042 | 19 | 0050 | 000 | PHS QUARANTINE STATION | 1 | 1921 | 1926 | 19.0 | 1951 | R | | | | | | |
| 7511 | 04094 | 19 | 0050 | 000 | PHS HOSPITAL WYMAN PARK DR & 31ST ST | 1 | 1884 | 1931 | 10.1 | 1884 1924 | R | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | CORPS OF ENG -CIVIL- | | | | | | | | | | | | |
| 9600 | 09807 | 19 | 0050 | 000 | 23RD & MD AVE 23RD & MD AVE | 4 | 1938 | | 3.6 | | | | | | | | |
| 9600 | 10685 | 19 | 0050 | 000 | PERRY BAR SITE | 4 | 1921 | | 1.7 | | | | | | | | |
| | 24 | | | | | 49 | | | 807.2◆ | | | | | | | | |
| | | | | | ALLEGANY | | | | | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 03984 | 19 | 0600 | 001 | POST OFFICE MAIN & WATER STS | 1 | 1909 | | .3 | 1906 | | 0743 | | | | | |
| 1800 | 04020 | 19 | 0410 | 001 | COURT HOUSE & P O PERSHING ST | 1 | 1931 | | .8 | 1924 | CODE | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | ARMY | | | | | | | | | | | | |
| 2100 | 22317 | 19 | 0410 | DOI | USAR CTR CUMBERLAND | 4 | 1960 | | 6.0 | | | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | CORPS OF ENG -CIVIL- | | | | | | | | | | | | |
| 9600 | 09809 | 19 | 0410 | 001 | CUMBERLAND-RIDGELEY FC | 4 | 1952 | 1962 | 44.0 | | | | | | | | |
| | 4 | | | | | 6 | | | 51.1◆ | | | | | | | | |
| | | | | | ANNE ARUNDEL | | | | | | | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | NAVY | | | | | | | | | | | | |
| 1700 | 23490 | 19 | 0030 | 003 | HOSPITAL | 1 | 1868 | | 19.0 | 1902 | | | | | | | |
| 1700 | 23491 | 19 | 0030 | 003 | ENGINEER EXPERIMENT STA | 1 | 1904 | 1944 | 50.6 | 1900 1906 1939 | 1254 | 0743 | | | | | |
| 1700 | 23491 | 19 | 0030 | 003 | | 4 | 1954 | | 19.4 | | | | | | 04 | 21 | 1944 |
| 1700 | 23492 | 19 | 0030 | 003 | RADIO STATION | 1 | 1909 | 1944 | 526.0 | 1906 1939 1939 | 1254 | 0743 | | | 03 04 | 04 29 | 1941 1944 |
| 1700 | 23496 | 19 | 0030 | 003 | STATION BUPERS | 1 | 1808 | 1944 | 227.7 | 1902 1906 | 1254 | 0743 | | | 04 | 29 | 1944 |
| 1700 | 23496 | 19 | 0030 | 003 | | 4 | 1944 | 1962 | 48.3 | | | | | | | | |
| 1700 | 23498 | 19 | 0030 | 003 | SCH ACADEMY | 1 | 1808 | 1941 | 1,051.0 | 1900 1902 1906 | | | | | | | |
| 1700 | 23498 | 19 | 0030 | 003 | | 4 | 1950 | | 112.0 | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 04014 | 19 | 0030 | 003 | POST OFFICE CHURCH & NORTHWEST | 3 | 1900 | | .8 | 1902 | 0364 | 0263 | | | | | |
| | | | | | TREASURY | | | | | | | | | | | | |
| | | | | | COAST GUARD | | | | | | | | | | | | |
| 2023 | 08239 | 19 | 9999 | 003 | BREMERTON CHANNEL LT | 1 | 1867 | | .N | 1868 | 0217 | 0140 | | | | | |

| GSA CONTROL NO. AGENCY BUREAU | INSTAL-LATION | STATE | CITY | COUNTY | DESCRIPTION | JURIS. CODE | DATES ACQUIRED FROM | TO | LAND AREA ACRES - TO NEAREST TENTH | STATE STATUTE YEAR OF ENACTMENT | PAGE NO. | CHAPTER NO. | FEDERAL LAW VOLUME NO. | PAGE NO. | MO. | DAY | YEAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2023 | 08239 | 19 | 9999 | 003 | | 4 | 1867 | | .N | | | | | | | | |
| 2023 | 08264 | 19 | 0715 | 003 | GREENBURY POINT LT HO | 1 | 1889 | | 5.0 | 1874 | 0274 | 0193 | | | | | |
| 2023 | 08292 | 19 | 9999 | 003 | SANDY POINT LT STA | 1 | 1883 | | 5.0 | 1874 | 0274 | 0193 | | | | | |
| 2023 | 10901 | 19 | 9999 | 003 | THOMAS POINT LIGHT STA | 1 | 1874 | | 5.0 | 1874 | 0274 | 0193 | | | | | |
| | | | | | **DEFENSE** | | | | | | | | | | | | |
| | | | | | **ARMY** | | | | | | | | | | | | |
| 2100 | 20026 | 19 | 0030 | 003 | ANNAPOLIS NATL CEMETERY | 1 | 1871 | | 4.0 | 1872 | 0250 | 0173 | | | | | |
| 2100 | 20243 | 19 | 9999 | 003 | CURTIS BAY STGE ACTY LE | 1 | 1916 | 1943 | 826.0 | 1906 | 1254 | 0743 | | | 04 | 22 | 1943 |
| 2100 | 20567 | 19 | 0575 | 003 | MEADE FORT GEORGE G | 1 | 1919 | 1943 | 13,553.0 | 1906 | 1254 | 0743 | | | 04 | 22 | 1943 |
| | | | | | | | | | | 1906 | 1254 | 0743 | | | 12 | 30 | 1948 |
| 2100 | 20567 | 19 | 0575 | 003 | | 2 | 1944 | | 1.0 | 1943 | 0759 | 0687 | | | 07 | 24 | 1945 |
| 2100 | 20567 | 19 | 0575 | 003 | | 4 | 1956 | | .N | | | | | | | | |
| 2100 | 21419 | 19 | 9999 | 003 | NIKE WASH BALTO SITE 25 | 4 | 1955 | | 48.0 | | | | | | | | |
| 2100 | 21445 | 19 | 9999 | 003 | NIKE WASH BALTO SITE 26 | 4 | 1955 | | 31.0 | | | | | | | | |
| 2100 | 21446 | 19 | 1192 | 003 | NIKE WASH BALTO SITE 43 | 4 | 1955 | | 36.0 | | | | | | | | |
| | | | | | **DEFENSE** | | | | | | | | | | | | |
| | | | | | **CORPS OF ENG -CIVIL-** | | | | | | | | | | | | |
| 9600 | 10681 | 19 | 9999 | 003 | BALTIMORE HARBOR & CHS | 4 | 1913 | | .2 | | | | | | | | |
| | 17 | | | | | | | 45 | 16,569.0* | | | | | | | | |
| | | | | | **BALTIMORE** | | | | | | | | | | | | |
| | | | | | **INTERIOR** | | | | | | | | | | | | |
| | | | | | **NATIONAL PARK SERVICE** | | | | | | | | | | | | |
| 1417 | 07012 | 19 | 1585 | 005 | HAMPTON NAT HIST SITE | 4 | 1948 | 1953 | 45.4 | | | | | | | | |
| | | | | | **DEFENSE** | | | | | | | | | | | | |
| | | | | | **NAVY** | | | | | | | | | | | | |
| 1700 | 22444 | 19 | 1005 | 005 | IND RESERVE AIRCR PLANT | 4 | 1949 | | 78.0 | | | | | | | | |
| | | | | | **POST OFFICE** | | | | | | | | | | | | |
| | | | | | **BUREAU OF FACILITIES** | | | | | | | | | | | | |
| 1800 | 03994 | 19 | 0255 | 005 | PO BRANCH OF BALTIMORE 1001 FREDERICK RD | 1 | 1938 | | .5 | 1924 | CODE | | | | | | |
| 1800 | 03995 | 19 | 0455 | 005 | PO BRANCH OF BALTIMORE SHIPPING & CENTER PL | 1 | 1940 | | .4 | 1924 | CODE | | | | | | |
| 1800 | 04027 | 19 | 1585 | 005 | PO BRANCH OF BALTIMORE CHESAPEAKE & WASHINGTON | 1 | 1937 | | .3 | 1924 | CODE | | | | | | |
| | | | | | **TREASURY** | | | | | | | | | | | | |
| | | | | | **COAST GUARD** | | | | | | | | | | | | |
| 2023 | 08254 | 19 | 1500 | 005 | CUTOFF CHAN RGE REAR LT | 1 | 1885 | | .1 | 1874 | 0274 | 0193 | | | | | |
| 2023 | 10903 | 19 | 9999 | 005 | CRAIGHILL CH RGE LS | 1 | 1874 | | 5.0 | 1874 | 0274 | 0193 | | | | | |
| | | | | | **DEFENSE** | | | | | | | | | | | | |
| | | | | | **ARMY** | | | | | | | | | | | | |
| 2100 | 21379 | 19 | 1585 | 005 | NIKE WASH BALTO SITE 92 | 4 | 1955 | | 25.0 | | | | | | | | |
| 2100 | 21404 | 19 | 9999 | 005 | NIKE WASH BALTO SITE 79 | 4 | 1955 | | 44.0 | | | | | | | | |
| 2100 | 21411 | 19 | 9999 | 005 | NIKE WASH BALTO SITE 09 | 4 | 1955 | | 26.0 | | | | | | | | |
| 2100 | 21447 | 19 | 9999 | 005 | NIKE WASH BALTO SITE 03 | 4 | 1955 | | 55.0 | | | | | | | | |

| GSA CONTROL NO. | | LOCATION | | | DESCRIPTION | JURISDICTIONAL CODE | DATES ACQUIRED | | LAND AREA | CITATION TO LEGISLATIVE AUTHORITY | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AGENCY BUREAU | INSTALLATION | STATE | CITY | COUNTY | | | FROM | TO | ACRES - TO NEAREST TENTH | STATE STATUTE | | | FEDERAL LAW (STATUTES-AT-LARGE) | | ACCEPTANCE OR RECORDATION DATE | | |
| | | | | | | | | | | YEAR OF ENACTMENT | PAGE NO. | CHAPTER NO. | VOLUME NO. | PAGE NO. | MO. | DAY | YEAR |
| | | | | | VETERANS ADMINISTRATION | | | | | | | | | | | | |
| 3600 | 07289 | 19 | 0572 | 005 | VA HOSPITAL OLD NORTH POINT RD | 3 | 1896 | 1899 | 94.6 | 1902 | 0364 | 0263 | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | AIR FORCE | | | | | | | | | | | | |
| 5700 | 24632 | 19 | 0735 | 005 | AF PLANT 0 AFP | 4 | 1955 | | 16.0 | | | | | | | | |
| | 13 | | | | | 19 | | | 390.3• | | | | | | | | |
| | | | | | CALVERT | | | | | | | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | NAVY | | | | | | | | | | | | |
| 1700 | 24309 | 19 | 1480 | 009 | ORDNANCE LAB TEST FAC | 1 | 1943 | | 18.0 | 1906 | 1254 | 0743 | | | 07 | 15 | 1943 |
| | | | | | TREASURY | | | | | | | | | | | | |
| | | | | | COAST GUARD | | | | | | | | | | | | |
| 2023 | 08252 | 19 | 0965 | 009 | COVE POINT LS | 1 | 1828 | | 2.0 | 1827 | | 0201 | | | | | |
| 2023 | 10907 | 19 | 9999 | 009 | DRUM POINT LIGHT STA | 1 | 1883 | | 5.0 | 1874 | 0274 | 0193 | | | | | |
| 2023 | 10908 | 19 | 1110 | 009 | NORTH BEACH LBS | 3 | 1883 | 1884 | .7 | 1902 | 0364 | 0263 | | | | | |
| | 4 | | | | | 8 | | | 25.7• | | | | | | | | |
| | | | | | CAROLINE | | | | | | | | | | | | |
| | | | | | GENERAL SERVICES ADMIN | | | | | | | | | | | | |
| | | | | | REGION # 3 WASHINGTON | | | | | | | | | | | | |
| 4703 | 04078 | 19 | 0440 | 011 | POST OFFICE SITE N 2ND & MARKET STS | 4 | 1960 | | .7 | | | | | | | | |
| | 1 | | | | | 1 | | | .7• | | | | | | | | |
| | | | | | CARROLL | | | | | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 03979 | 19 | 1670 | 013 | POST OFFICE 83 EAST MAIN | 1 | 1931 | | .4 | 1924 | CODE | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | ARMY | | | | | | | | | | | | |
| 2100 | 22310 | 19 | 1670 | 013 | USAR CTR WESTMINSTER | 4 | 1959 | | 4.0 | | | | | | | | |
| | | | | | FEDERAL AVIATION AGENCY | | | | | | | | | | | | |
| 6900 | 11310 | 19 | 1670 | 013 | NAV FAC VOR | 4 | 1956 | | .2 | | | | | | | | |
| | 3 | | | | | 4 | | | 4.6• | | | | | | | | |
| | | | | | CECIL | | | | | | | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | NAVY | | | | | | | | | | | | |
| 1700 | 22562 | 19 | 0040 | 015 | TRAINING CENTER | 1 | 1942 | 1943 | 1,048.0 | 1906 | 1254 | 0743 | | | 05 | 20 | 1943 |
| | | | | | | | | | | 1906 | 1254 | 0743 | | | 02 | 18 | 1943 |
| | | | | | | | | | | 1906 | 1254 | 0743 | | | 06 | 28 | 1943 |
| 1700 | 24165 | 19 | 0040 | 015 | TITLE VIII&MANOR HGHTS | 4 | 1953 | | 139.0 | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 03985 | 19 | 0520 | 015 | POST OFFICE WEST MAIN ST | 1 | 1938 | | .8 | 1924 | CODE | | | | | | |

| GSA CONTROL NO — AGENCY NO. | GSA CONTROL NO — INSTALLATION | STATE | CITY | COUNTY | DESCRIPTION | JURISDICTIONAL CODE | DATES ACQUIRED — FROM | DATES ACQUIRED — TO | LAND AREA — ACRES · TO NEAREST TENTH | STATE STATUTE — YEAR OF ENACTMENT | STATE STATUTE — PAGE NO. | STATE STATUTE — CHAPTER NO. | FEDERAL LAW — VOLUME NO. | FEDERAL LAW — PAGE NO. | ACCEPTANCE OR RECOGNITION DATE — MO. | DAY | YEAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | TREASURY | | | | | | | | | | | | |
| | | | | | COAST GUARD | | | | | | | | | | | | |
| 2023 | 08295 | 19 | 9999 | 015 | TURKEY POINT LIGHT | 1 | 1832 | | .1 | 1832 | | 0150 | | | | | |
| | | | | | VETERANS ADMINISTRATION | | | | | | | | | | | | |
| 36D0 | 07308 | 19 | 1195 | 015 | VA HOSPITAL | 1 | 1918 | 1936 | 522.2 | 1906 | 1254 | 0743 | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | CORPS OF ENG —CIVIL— | | | | | | | | | | | | |
| 9600 | 09808 | 19 | 9999 | 015 | CHESAPEAKE & DELA CAN | 4 | 1919 | 1938 | 2,205.5 | | | | | | | | |
| 9600 | 09810 | 19 | 9999 | 015 | PEARCE CREEK DIS AREA | 4 | 1937 | | 682.0 | | | | | | | | |
| | 7 | | | | | 13 | | | 4,597.6* | | | | | | | | |
| | | | | | CHARLES | | | | | | | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | NAVY | | | | | | | | | | | | |
| 1700 | 23602 | 19 | 9999 | 017 | MARCOR SCHOOL QUANTICO | 4 | 1917 | | 5.0 | | | | | | | | |
| 1700 | 24396 | 19 | 9999 | 017 | LABORATORY ONR | 4 | 1961 | | 24.0 | | | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | ARMY | | | | | | | | | | | | |
| 2100 | 20263 | 19 | 0890 | 017 | EAST COAST RAD REC STA | 1 | 1943 | | 507.0 | 1906 | 1254 | 0743 | | | 04 | 22 | 1943 |
| 2100 | 21349 | 19 | 9999 | 017 | NIKE WASH BALTO SITE 45 | 4 | 1955 | | 24.0 | | | | | | | | |
| 2100 | 21350 | 19 | 9999 | 017 | NIKE WASH BALTO SITE 54 | 4 | 1955 | | 22.0 | | | | | | | | |
| | 5 | | | | | 6 | | | 582.0* | | | | | | | | |
| | | | | | DORCHESTER | | | | | | | | | | | | |
| | | | | | INTERIOR | | | | | | | | | | | | |
| | | | | | FISH & WILDLIFE SERVICE | | | | | | | | | | | | |
| 1435 | 09258 | 19 | 0230 | 019 | BLACKWATER REFUGE | 4 | 1933 | 1951 | 11,216.3 | | | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | NAVY | | | | | | | | | | | | |
| 1700 | 22480 | 19 | 9999 | 019 | AMPHIBIOUS BASE | 4 | 1945 | 1948 | 6,012.0 | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 04017 | 19 | 0230 | 019 | POST OFFICE HIGH & MILL STS | 1 | 1915 | | .3 | 1912 | CODE | | | | | | |
| | | | | | TREASURY | | | | | | | | | | | | |
| | | | | | COAST GUARD | | | | | | | | | | | | |
| 2023 | 08240 | 19 | 9999 | 019 | CAMBRDGE CHAN RGE FT LT | 1 | 1902 | | .N | 1874 | 0274 | 0193 | | | | | |
| 2023 | 10906 | 19 | 9999 | 019 | HOOPER ISLAND L S | 1 | 1924 | | 5.0 | 1874 / 1906 | 0274 / 1254 | 0193 / 0743 | | | | | |
| 2023 | 13046 | 19 | 1630 | 019 | NANTICOKE LASTA | 4 | 1961 | | .2 | 1943 | 0923 | 0687 | 054 | 0019 | | | |
| | 6 | | | | | 11 | | | 17,233.8* | | | | | | | | |
| | | | | | FREDERICK | | | | | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 04023 | 19 | 0580 | 021 | POST OFFICE 201 E PATRICK ST | 1 | 1912 | | .5 | 1912 | CODE | | | | | | |

# JURISDICTIONAL STATUS OF FEDERAL LAND AREAS

| AGENCY | INSTALLATION | STATE | CITY | COUNTY | DESCRIPTION | JURISDICTIONAL CODE | FROM | TO | ACRES TO NEAREST TENTH | YEAR OF ENACTMENT | PAGE NO | CHAPTER NO | VOLUME NO | PAGE NO | MO | DAY | YEAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | ARMY | | | | | | | | | | | | |
| 2100 | 20267 | 19 | 0232 | 021 | DETRICK FORT | 1 | 1944 | 1948 | 690.5 | 1950 | | 0059 | | | 05 | 04 | 1950 |
| 2100 | 20267 | 19 | 0232 | 021 | | 2 | 1945 | | 12.2 | 1943 | 0759 | 0687 | | | 07 | 24 | 1945 |
| 2100 | 20267 | 19 | 0232 | 021 | | 4 | 1952 | 1957 | 511.3 | | | | | | | | |
| | 2 | | | | | 7 | | | 1,214.5* | | | | | | | | |
| | | | | | GARRETT | | | | | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 04031 | 19 | 1140 | 023 | POST OFFICE SECOND ST | 1 | 1939 | | .4 | 1939 | CODE | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | CORPS OF ENG -CIVIL- | | | | | | | | | | | | |
| 9600 | 09812 | 19 | 9999 | 023 | YOUGHIOGHENY RIV RES | 4 | 1938 | 1951 | 1,070.0 | | | | | | | | |
| | 2 | | | | | 3 | | | 1,070.4* | | | | | | | | |
| | | | | | HARFORD | | | | | | | | | | | | |
| | | | | | INTERIOR | | | | | | | | | | | | |
| | | | | | FISH & WILDLIFE SERVICE | | | | | | | | | | | | |
| 1435 | 09406 | 19 | 0010 | 025 | SUSQUEHANNA REFUGE | 2 | 1852 | 1891 | 3.7 | 1888 | 1433 | 0096 | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 03981 | 19 | 0770 | 025 | POST OFFICE 310 NO UNION ST | 1 | 1935 | 1936 | .5 | 1924 | CODE | | | | | | |
| 1800 | 04015 | 19 | 0010 | 025 | POST OFFICE 30 W BEL AIR AVE | 1 | 1936 | | .3 | 1924 | CODE | | | | | | |
| 1800 | 04016 | 19 | 0090 | 025 | POST OFFICE 143 N MAIN ST | 1 | 1935 | | 1.0 | 1924 | CODE | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | ARMY | | | | | | | | | | | | |
| 2100 | 20001 | 19 | 0015 | 025 | ABERDEEN PROVING GROUND | 1 | 1824 | 1943 | 72,856.0 | 1824 | 0037 | 0054 | | | 07 | 10 | 1942 |
| | | | | | | | | | | 1906 | 1254 | 0743 | | | 04 | 22 | 1943 |
| | | | | | | | | | | 1906 | 1254 | 0743 | | | 05 | 29 | 1943 |
| 2100 | 20001 | 19 | 0015 | 025 | | 2 | 1944 | | 16.0 | 1943 | | 0680 | | | 08 | 16 | 1944 |
| 2100 | 20001 | 19 | 0015 | 025 | | 4 | 1943 | 1946 | 1,897.0 | | | | | | | | |
| | 5 | | | | | 15 | | | 74,774.5* | | | | | | | | |
| | | | | | HOWARD | | | | | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 04022 | 19 | 0530 | 027 | POST OFFICE 161 MAIN ST | 1 | 1938 | 1939 | .3 | 1924 | CODE | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | ARMY | | | | | | | | | | | | |
| 2100 | 21051 | 19 | 9999 | 027 | MICROWAVE STA D DAMASCU | 4 | 1953 | | 3.0 | | | | | | | | |
| | | | | | FEDERAL COMMUNICATIONS | | | | | | | | | | | | |
| 2700 | 05076 | 19 | 1390 | 027 | MONITOR STA AND LAB 1/8 MI E OF GUILFORD RD | 4 | 1941 | | 237.0 | | | | | | | | |
| | 3 | | | | | 4 | | | 240.3* | | | | | | | | |

| AGENCY | INSTALLATION | STATE | CITY | COUNTY | DESCRIPTION | JURISDICTIONAL CODE | FROM | TO | ACRES - TO NEAREST TENTH | YEAR OF ENACTMENT | PAGE NO. | CHAPTER NO. | VOLUME NO. | PAGE NO. | MO. | DAY | YEAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | ARMY | | | | | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 04018 | 19 | 0310 | 029 | POST OFFICE SPRING ST | 1 | 1935 | 1936 | .5 | 1924 | CODE | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | ARMY | | | | | | | | | | | | |
| 2100 | 21458 | 19 | 9999 | 029 | NIKE WASH BALTO SITE 30 | 4 | 1955 | | 57.0 | | | | | | | | |
| | 2 | | | | | 3 | | | 57.5* | | | | | | | | |
| | | | | | MONTGOMERY | | | | | | | | | | | | |
| | | | | | COMMERCE | | | | | | | | | | | | |
| | | | | | COAST AND GEODETIC SURV | | | | | | | | | | | | |
| 1307 | 05029 | 19 | 0630 | 031 | VARIATION OF LAT OBSERV OESELUM AVE & JAMES ST | 3 | 1899 | | 2.3 | 1902 | 0364 | 0263 | | | | | |
| | | | | | BUREAU OF PUBLIC ROADS | | | | | | | | | | | | |
| 1319 | 14628 | 19 | 9999 | 031 | WM C BOWLES TRACT NO 1 | 4 | 1953 | | 1.3 | | | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | NAVY | | | | | | | | | | | | |
| 1700 | 23450 | 19 | 0130 | 031 | MEDICAL CENTER | 1 | 1938 | 1939 | 241.0 | 1906 | 1254 | 0743 | | | | | |
| 1700 | 23895 | 19 | 0242 | 031 | LABORATORY BUSHIPS | 1 | 1937 | 1943 | 159.0 | 1906 | 1254 | 0743 | | | 06 | 14 | 1943 |
| 1700 | 23895 | 19 | 0242 | 031 | | 4 | 1946 | | 26.0 | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 03973 | 19 | 0130 | 031 | PO BRANCH OF WASH D C 7400 WISCONSIN N W | 1 | 1937 | | .2 | 1924 | CODE | | | | | | |
| 1800 | 04028 | 19 | 1450 | 031 | POST OFFICE 8412 GEORGIA AVE | 1 | 1936 | | .4 | 1924 | CODE | | | | | | |
| 1800 | 04029 | 19 | 1360 | 031 | POST OFFICE WASHINGTON ST | 1 | 1938 | | .6 | 1924 | COOE | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | ARMY | | | | | | | | | | | | |
| 2100 | 20037 | 19 | 9999 | 031 | ARMY MAP SERVICE | 2 | 1945 | | 33.0 | 1943 | 0759 | 0687 | | | 07 | 24 | 1945 |
| 2100 | 20037 | 19 | 9999 | 031 | | 4 | 1946 | | 7.0 | | | | | | | | |
| 2100 | 20364 | 19 | 1450 | 031 | REED WALTER AMC GLENHAV | 4 | 1947 | | 20.0 | | | | | | | | |
| 2100 | 20743 | 19 | 0565 | 031 | REED WALTER AMC FOREST | 1 | 1942 | 1943 | 182.0 | 1906 | 1254 | 0743 | | | 04 | 22 | 1943 |
| 2100 | 21351 | 19 | 9999 | 031 | NIKE WASH BALTO SITE 92 | 4 | 1955 | | 24.0 | | | | | | | | |
| 2100 | 21352 | 19 | 9999 | 031 | NIKE WASH BALTO SITE 93 | 4 | 1955 | | 33.0 | | | | | | | | |
| 2100 | 21528 | 19 | 9999 | 031 | NIKE WASH BALTO SITE 94 | 4 | 1956 | | 35.0 | | | | | | | | |
| 2100 | 21827 | 19 | 1360 | 031 | USAR CTR ROCKVILLE | 4 | 1957 | | 4.0 | | | | | | | | |
| | | | | | GENERAL SERVICES ADMIN | | | | | | | | | | | | |
| | | | | | CENTRAL OFFICE | | | | | | | | | | | | |
| 4700 | 12659 | 19 | 0630 | 031 | BUR OF STANDARDS SITE | 4 | 1956 | | 555.0 | | | | | | | | |
| | | | | | REGION # 3 WASHINGTON | | | | | | | | | | | | |
| 4703 | 04142 | 19 | 0130 | 031 | P H S SITE 9000 WISC AVE | 1 | 1950 | | 1.8 | 1953 | CODE | 0158 | | | 09 | 25 | 1953 |
| | | | | | HEALTH ED AND WELFARE | | | | | | | | | | | | |
| | | | | | PUBLIC HEALTH SERVICE | | | | | | | | | | | | |
| 7511 | 04095 | 19 | 0130 | 031 | NATL INSTS OF HEALTH | 1 | 1935 | 1942 | 229.6 | 1953 | | 0158 | | | 09 | 25 | 1955 |

343

# JURISDICTIONAL STATUS OF FEDERAL LAND AREAS

| Agency Bureau | Installation | State | City | County | Description | Juris. Code | From | To | Acres - to nearest tenth | State Statute Year of Enactment | State Statute Page No. | State Statute Chapter No. | Fed. Law Volume No. | Fed. Law Page No. | Acc. Mo | Acc. Day | Acc. Year |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7511 | 04095 | 19 | 0130 | 031 | 9000 WISCONSIN AVENUE | 4 | 1949 | | 76.7 | | | | | | | | |
| 7511 | 14667 | 19 | 0130 | 031 | N I H FARM | 4 | 1960 | | 498.9 | | | | | | | | |
| | | | | | ATOMIC ENERGY COMM | | | | | | | | | | | | |
| 8900 | 11443 | 19 | 0660 | 031 | AEC HEADQUARTERS | 2 | 1955 | | 98.9 | 1957 | R | | | | 10 | 23 | 1958 |
| | | | | | | | | | | 1902 | | 0263 | | | | | |
| | | | | | | | | | | 1904 | | 0357 | | | | | |
| | | | | | | | | | | 1908 | | 0194 | | | | | |
| | | | | | | | | | | 1943 | | 0687 | | | | | |
| 8900 | 11443 | 19 | 0660 | 031 | | 4 | 1960 | | 2.0 | | | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | CORPS OF ENG -CIVIL- | | | | | | | | | | | | |
| 9600 | 09811 | 19 | 9999 | 031 | WASHINGTON AQUEDUCT | 2 | 1853 | 1930 | 365.6 | 1853 | 0208 | 0179 | | | | | |
| 9600 | 09811 | 19 | 9999 | 031 | | 4 | 1950 | 1953 | 11.0 | | | | | | | | |
| | 20 | | | | | 41 | | | 2,608.3• | | | | | | | | |
| | | | | | PRINCE GEORGES | | | | | | | | | | | | |
| | | | | | CENTRAL INTELLIGENCE | | | | | | | | | | | | |
| 1103 | 06330 | 19 | 0785 | 033 | F B & S MONITORING STA | 4 | 1948 | | 96.3 | | | | | | | | |
| | | | | | AGRICULTURE | | | | | | | | | | | | |
| | | | | | AGR RESEARCH SERVICE | | | | | | | | | | | | |
| 1205 | 07365 | 19 | 0675 | 033 | PLANT INTRODUCTION STA | 4 | 1919 | 1940 | 70.0 | | | | | | | | |
| 1205 | 08940 | 19 | 0100 | 033 | AGRI RES CENTER OPER | 1 | 1910 | 1942 | 9,598.4 | 1906 | 1254 | 0743 | | | 04 | 22 | 1943 |
| 1205 | 08940 | 19 | 0100 | 033 | HOULTON ROAD | 4 | 1940 | 1957 | 989.8 | | | | | | | | |
| | | | | | COMMERCE | | | | | | | | | | | | |
| | | | | | BUREAU OF PUBLIC ROADS | | | | | | | | | | | | |
| 1319 | 12583 | 19 | 9999 | 033 | WOODROW WILSON BRIDGE | 4 | 1958 | | 161.9 | | | | | | | | |
| | | | | | INTERIOR | | | | | | | | | | | | |
| | | | | | BUREAU OF MINES | | | | | | | | | | | | |
| 1415 | 06810 | 19 | 0370 | 033 | METALLURGY RESEARCH CTR UNIVERSITY BOULEVARD | 2 | 1935 | | 12.9 | 1939 | | R | | | | | |
| | | | | | NATIONAL PARK SERVICE | | | | | | | | | | | | |
| 1417 | 07166 | 19 | 9999 | 033 | SUITLAND PARKWAY | 2 | 1941 | 1944 | 537.3 | 1943 | 0923 | 0687 | | | | | |
| | | | | | FISH AND WILDLIFE SERV | | | | | | | | | | | | |
| 1435 | 09267 | 19 | 0370 | 033 | COLLEGE PARK TECH LAB | 2 | 1935 | | 1.4 | 1888 | 1433 | 0096 | | | 11 | 09 | 1935 |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | NAVY | | | | | | | | | | | | |
| 1700 | 24437 | 19 | 0285 | 033 | COMMUNICATION STATION | 1 | 1935 | 1943 | 559.0 | 1906 | 1254 | 0743 | | | | | |
| 1700 | 24437 | 19 | 0285 | 033 | | 4 | | | 4.0 | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 03978 | 19 | 1620 | 033 | POST OFFICE 4030 MAIN ST | 1 | 1936 | | .4 | 1924 | CODE | | | | | | |
| 1800 | 03982 | 19 | 0900 | 033 | POST OFFICE 324 MAIN ST | 1 | 1936 | | .5 | 1924 | CODE | | | | | | |
| 1800 | 04026 | 19 | 0830 | 033 | POST OFFICE 4325 GALLATIN ST | 1 | 1934 | | .5 | 1924 | CODE | | | | | | |
| 1800 | 12813 | 19 | 1330 | 033 | P O SITE | 4 | 1942 | | 6.6 | | | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | ARMY | | | | | | | | | | | | |
| 2100 | 21348 | 19 | 9999 | 033 | NIKE WASH BALTO SITE 35 | 4 | 1955 | | 31.0 | | | | | | | | |

| AGENCY BUREAU | INSTALLATION | STATE | CITY | COUNTY | DESCRIPTION | JURISDICTIONAL CODE | DATES ACQUIRED FROM | TO | LAND AREA ACRES - TO NEAREST TENTH | STATE STATUTE YEAR OF ENACTMENT | PAGE NO. | CHAPTER NO. | FEDERAL LAW VOLUME NO. | PAGE NO. | MO. | DAY | YEAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2100 | 21569 | 19 | 9999 | 033 | NIKE WASH BALTO SITE 36 | 4 | 1956 | | 42.0 | | | | | | | | |
| 2100 | 22071 | 19 | 1330 | 033 | USAR CTR RIVERDALE | 4 | 1959 | | 6.0 | | | | | | | | |
| 2100 | 22112 | 19 | 1520 | 033 | WASHINGTON DEF HDQS SIT | 1 | 1942 | | 47.0 | 1906 | 1254 | 0743 | | | 07 | 06 | 1942 |
| | | | | | SMITHSONIAN INSTITUTION | | | | | | | | | | | | |
| 3300 | 05169 | 19 | 1445 | 033 | S I FACILITY INDEPENDENCE AT 10TH SW | 1 | 1959 | | 21.0 | | | | | | | | |
| | | | | | GENERAL SERVICES ADMIN | | | | | | | | | | | | |
| | | | | | REGION # 3 WASHINGTON | | | | | | | | | | | | |
| 4703 | 04079 | 19 | 1520 | 033 | SUITLAND BLDGS | 1 | 1941 | | 299.7 | 1939 | CODE | 0031 | | | 07 | 06 | 1942 |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | AIR FORCE | | | | | | | | | | | | |
| 5700 | 24000 | 19 | 0025 | 033 | ANDREWS AFB | 1 | 1942 | 1943 | 4,272.0 | 1906 | 1254 | 0743 | | | 04 | 22 | 1943 |
| 5700 | 24000 | 19 | 0025 | 033 | | 4 | 1944 | | 119.0 | | | | | | | | |
| 5700 | 24001 | 19 | 1620 | 033 | GOVERNORS BRIDGE CST | 4 | 1952 | | 1,023.0 | | | | | | | | |
| 5700 | 24002 | 19 | 0175 | 033 | BRANDYWINE CST | 4 | 1952 | | 1,635.0 | | | | | | | | |
| 5700 | 24803 | 19 | 0175 | 033 | BRANDYWINE STG | 4 | 1953 | | 8.0 | | | | | | | | |
| | | | | | NATL AERO & SPACE ADMIN | | | | | | | | | | | | |
| 8000 | 13865 | 19 | 0710 | 033 | GODDARD SP FLT CENTER | 1 | 1936 | | 547.8 | 1906 | 1254 | 743R | 0468 | | | | |
| | 23 | | | | | 38 | | | 20,090.5• | | | | | | | | |
| | | | | | ST MARYS | | | | | | | | | | | | |
| | | | | | TREASURY | | | | | | | | | | | | |
| | | | | | COAST GUARD | | | | | | | | | | | | |
| 2023 | 08289 | 19 | 1205 | 037 | PINEY POINT LTSTA | 1 | 1835 | 1941 | 2.4 | 1834 1906 | 1254 | 0265 0743 | | | 05 | 08 | 1942 |
| 2023 | 08290 | 19 | 1235 | 037 | POINT LOOKOUT LT STA | 1 | 1832 | | 4.5 | 1825 | 0129 | 0169 | | | | | |
| 2023 | 08290 | 19 | 1235 | 037 | | 4 | 1951 | | 2.0 | | | | | | | | |
| 2023 | 10902 | 19 | 9999 | 037 | POINT NO POINT LIGHT ST | 1 | 1924 | | 5.0 | 1874 1906 | 0274 1254 | 0193 0743 | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | ARMY | | | | | | | | | | | | |
| 2100 | 20714 | 19 | 1235 | 037 | POINT LOOKOUT CONFED CE | 1 | 1910 | | 1.0 | 1906 | 1254 | 0743 | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | AIR FORCE | | | | | | | | | | | | |
| 5700 | 24833 | 19 | 0930 | 037 | HERMANVILLE GAP | 4 | 1957 | | 1.0 | | | | | | | | |
| | 5 | | | | | 12 | | | 15.9• | | | | | | | | |
| | | | | | SOMERSET | | | | | | | | | | | | |
| | | | | | INTERIOR | | | | | | | | | | | | |
| | | | | | FISH & WILDLIFE SERVICE | | | | | | | | | | | | |
| 1435 | 10757 | 19 | 0400 | 039 | MARTIN REFUGE | 4 | 1954 | 1958 | 3,874.8 | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 04019 | 19 | 0400 | 039 | POST OFFICE MAIN & 4TH STS | 1 | 1932 | | .3 | 1924 | CODE | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |

| AGENCY | INSTALLATION | STATE | CITY | COUNTY | DESCRIPTION | JURISDICTIONAL BODY | FROM | TO | ACRES - TO NEAREST TENTH | YEAR OF ENACTMENT | PAGE NO | CHAPTER NO | VOLUME NO | PAGE NO | MO | DAY | YEAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | ARMY | | | | | | | | | | | | |
| 2100 | 22075 | 19 | 0400 | 039 | CRISFIELD RECREATION CT | 4 | 1959 | | 2.0 | | | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | CORPS OF ENG -CIVIL- | | | | | | | | | | | | |
| 9600 | 10684 | 19 | 0400 | 039 | BROAD CREEK | 4 | 1913 | | 1.4 | | | | | | | | |
| | 4 | | | | | | 5 | | 3,878.5* | | | | | | | | |
| | | | | | TALBOT | | | | | | | | | | | | |
| | | | | | INTERIOR | | | | | | | | | | | | |
| | | | | | FISH AND WILDLIFE SERV | | | | | | | | | | | | |
| 1435 | 12974 | 19 | 1180 | 041 | OXFORD-BIOL-LAB | 4 | 1959 | | 11.5 | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 04021 | 19 | 0480 | 041 | POST OFFICE 116 E DOVER ST | 1 | 1933 | | .8 | 1924 | CODE | | | | | | |
| | 2 | | | | | | 3 | | 12.3* | | | | | | | | |
| | | | | | WASHINGTON | | | | | | | | | | | | |
| | | | | | INTERIOR | | | | | | | | | | | | |
| | | | | | NATIONAL PARK SERVICE | | | | | | | | | | | | |
| 1417 | 07011 | 19 | 1430 | 043 | ANTIETAM NBS/CEM | 1 | 1878 | | 11.3 | 1878 | 0079 | 0063 | | | | | |
| 1417 | 07011 | 19 | 1430 | 043 | | 2 | 1895 | 1915 | 42.8 | 1892 | 0244 | 0174 | | | | | |
| 1417 | 07011 | 19 | 1430 | 043 | EAST MAIN STREET | 4 | 1942 | 1962 | 311.6 | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 03980 | 19 | 0730 | 043 | POST OFFICE 30-50 W FRANKLIN | 1 | 1933 | | .9 | 1924 | CODE | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | ARMY | | | | | | | | | | | | |
| 2100 | 20758 | 19 | 0576 | 043 | RITCHIE FORT | 4 | 1951 | | 634.0 | | | | | | | | |
| 2100 | 20890 | 19 | 9999 | 043 | RITCHIE FT SITE B SHARP | 4 | 1953 | | 546.0 | | | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | AIR FORCE | | | | | | | | | | | | |
| 5700 | 24608 | 19 | 0730 | 043 | AF PLANT 11        AFP | 2 | 1944 | | 60.0 | 1943 | | 0687 | | | 07 | 24 | 1945 |
| | 5 | | | | | | 11 | | 1,606.6* | | | | | | | | |
| | | | | | WICOMICO | | | | | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 03983 | 19 | 1380 | 045 | POST OFFICE EAST MAIN ST | 1 | 1917 | | .5 | 1912 | CODE | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | CORPS OF ENG -CIVIL- | | | | | | | | | | | | |
| 9600 | 10682 | 19 | 1380 | 045 | SALISBURY CHANNEL | 4 | 1910 | | 6.3 | | | | | | | | |
| | 2 | | | | | | 3 | | 6.8* | | | | | | | | |

| GSA CONTROL NO. / BUREAU | INSTALLATION | STATE | CITY | COUNTY | DESCRIPTION | JURISDICTIONAL CODE | DATES ACQUIRED FROM | TO | LAND AREA ACRES - TO NEAREST TENTH | STATE STATUTE YEAR OF ENACTMENT | PAGE NO. | CHAPTER NO. | FEDERAL LAW VOLUME NO. | PAGE NO. | MO. | DAY | YEAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | WORCESTER | | | | | | | | | | | | |
| | | | | | INTERIOR | | | | | | | | | | | | |
| | | | | | FISH AND WILDLIFE SERV | | | | :1 | | | | | | | | |
| 1435 | 09462 | 19 | 1150 | 047 | CHINCOTEAGUE NAT REF | 4 | 1943 | 1953 | 417.8 | | | | | | | | |
| | | | | | POST OFFICE | | | | | | | | | | | | |
| | | | | | BUREAU OF FACILITIES | | | | | | | | | | | | |
| 1800 | 04030 | 19 | 1230 | 047 | POST OFFICE 207 MARKET ST | 1 | 1937 | | .4 | 1924 | CODE | | | | | | |
| | | | | | TREASURY | | | | | | | | | | | | |
| | | | | | COAST GUARD | | | | | | | | | | | | |
| 2023 | 08281 | 19 | 1150 | 047 | OCEAN CITY LB STA | 1 | 1939 | | .9 | 1906 | 1254 | 0743 | | | | | |
| 2023 | 10909 | 19 | 1150 | 047 | OCEAN CITY MD L8STA | 3 | 1878 | 1890 | .2 | 1902 | 0364 | 0263 | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | CORPS OF ENG -CIVIL- | | | | | | | | | | | | |
| 9600 | 10683 | 19 | 1150 | 047 | OCEAN CITY INLET | 4 | 1933 | | 28.3 | | | | | | | | |
| | 5 | | | | | 8 | | | 447.6* | | | | | | | | |
| | | | | | MULTI-COUNTY INSTALL | | | | | | | | | | | | |
| | | | | | INTERIOR | | | | | | | | | | | | |
| | | | | | NATIONAL PARK SERVICE | | | | | | | | | | | | |
| 1417 | 07167 | 19 | 9999 | 999 | BALT WASH PKWY | 2 | 1950 | 1953 | 2,885.5 | 1943 | 0841 | 0644 | | | 11 | 03 | 1953 |
| 1417 | 07168 | 19 | 9999 | 999 | CHESAPEAKE OHIO CANAL | 2 | 1938 | | 682.2 | 1904 | 0642 | 0357 | | | | | |
| | | | | | | | | | | 1908 | 0266 | 0194 | | | | | |
| | | | | | | | | | | 1902 | 0364 | 0263 | | | | | |
| 1417 | 07171 | 19 | 9999 | 999 | CATOCTIN MOUNTAIN PARK | 4 | 1937 | 1940 | 5,746.1 | | | | | | | | |
| 1417 | 13480 | 19 | 9999 | 999 | C O CANAL NHP | 2 | 1938 | | 4,471.3 | 1902 | 0364 | 0263 | | | | | |
| | | | | | | | | | | 1904 | 0642 | 0357 | | | | | |
| | | | | | | | | | | 1908 | 0266 | 0194 | | | | | |
| 1417 | 17163 | 19 | 9999 | 999 | GEO WASH MEM PKWY | 2 | 1931 | 1940 | 1,347.7 | 1902 | 0364 | 0263 | | | | | |
| | | | | | | | | | | 1904 | 0642 | 0357 | | | | | |
| 1417 | 17163 | 19 | 9999 | 999 | | 4 | 1941 | 1960 | 652.0 | 1908 | 0266 | 0194 | | | | | |
| | | | | | FISH AND WILDLIFE SERV | | | | | | | | | | | | |
| 1435 | 09318 | 19 | 9999 | 999 | PATUXENT RESEARCH CENTE | 4 | 1933 | 1941 | 2,666.1 | | | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |
| | | | | | NAVY | | | | | | | | | | | | |
| 1700 | 23436 | 19 | 9999 | 999 | AIR STATION | 1 | 1942 | 1950 | 7,414.0 | 1906 | 1254 | 0743 | | | 06 | 06 | 1942 |
| | | | | | | | | | | 1906 | 1254 | 0743 | | | 07 | 19 | 1943 |
| | | | | | | | | | | 1906 | 1254 | 0743 | | | 03 | 17 | 1950 |
| | | | | | | | | | | 1906 | 1254 | 0743 | | | 07 | 15 | 1943 |
| 1700 | 23436 | 19 | 9999 | 999 | | 4 | 1958 | | 788.0 | | | | | | | | |
| 1700 | 23444 | 19 | 9999 | 999 | LABORATORY BUWEPS | 4 | 1944 | | 869.0 | | | | | | | | |
| 1700 | 23456 | 19 | 9999 | 999 | PROPELLANT PLANT | 1 | 1890 | | 3,265.4 | 1900 | | | | | | | |
| | | | | | | | | | | 1902 | | | | | | | |
| | | | | | | | | | | 1906 | 1254 | 0743 | | | | | |
| 1700 | 23456 | 19 | 9999 | 999 | | 4 | 1945 | | 55.6 | | | | | | | | |
| 1700 | 24108 | 19 | 9999 | 999 | APPLIED PHYSICS LAB | 4 | 1945 | | 1.0 | | | | | | | | |
| 1700 | 24109 | 19 | 9999 | 999 | NAVAL RESERVE LAB | 1 | 1941 | 1943 | 170.1 | 1906 | 1254 | 0743 | | | 07 | 15 | 1943 |
| 1700 | 24109 | 19 | 9999 | 999 | | 4 | 1944 | | 84.9 | 1906 | 1254 | 0743 | | | 11 | 05 | 1941 |
| 1700 | 24132 | 19 | 9999 | 999 | PUB WORKS OFFICE DIST | 1 | 1939 | | .5 | 1906 | 1254 | 0743 | | | | | |
| 1700 | 24132 | 19 | 9999 | 999 | | 4 | 1960 | | 10.5 | | | | | | | | |
| 1700 | 24311 | 19 | 9999 | 999 | WEAPONS LABORATORY | 1 | 1920 | | 69.0 | 1906 | 1254 | 0743 | | | | | |
| 1700 | 24395 | 19 | 9999 | 999 | RESERVE TRAINING CENTER | 4 | 1944 | | 4.0 | | | | | | | | |
| | | | | | DEFENSE | | | | | | | | | | | | |

| GSA CONTROL NO | | LOCATION | | | DESCRIPTION | JURISDICTIONAL CODE | DATES ACQUIRED | | LAND AREA | CITATION TO LEGISLATIVE AUTHORITY | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AGENCY BUREAU | INSTAL- LATION | STATE | CITY | COUNTY | | | FROM | TO | ACRES · TO NEAREST TENTH | STATE STATUTE | | | FEDERAL LAW STATUTES-AT-LARGE | | ACCEPTANCE OR RECORDATION DATE | | | |
| | | | | | | | | | | YEAR OF ENACTMENT | PAGE NO. | CHAPTER NO. | VOLUME NO. | PAGE NO. | MO. | DAY | YEAR | |
| | | | | | ARMY | | | | | | | | | | | | | |
| 2100 | 20036 | 19 | 9999 | 999 | ARMY CHEM CTR | 1 | 1917 | 1943 | 4,473.0 | 1906 | 1254 | 0743 | | | 07 | 28 | 1942 | |
| 2100 | 20036 | 19 | 9999 | 999 | | 4 | 1948 | 1951 | 80.0 | 1906 | 1254 | | | | 04 | 22 | 1943 | |
| 2100 | 21294 | 19 | 9999 | 999 | NIKE WASH BALTO SITE 44 | 4 | 1955 | | 31.0 | | | | | | | | | |
| | 16 | | | | | 45 | | | 35,766.9∗ | | | | | | | | | |
| | 180 | | | | | 360 | | | 182,052.6▪ | | | | | | | | | |

348

MARYLAND

INTERIOR
NATIONAL PARK SERVICE

1417 07167 19 9999 999 BALT WASH PKWY
    003 ANNE ARUNDEL
    033 PRINCE GEORGES

1417 07168 19 9999 999 CHESAPEAKE OHIO CANAL
    031 MONTGOMERY
    043 WASHINGTON

1417 07171 19 9999 999 CATOCTIN MOUNTAIN PARK
    021 FREDERICK
    043 WASHINGTON

1417 13480 19 9999 999 C O CANAL NHP
    001 ALLEGANY
    021 FREDERICK
    031 MONTGOMERY
    043 WASHINGTON

1417 17163 19 9999 999 GEO WASH MEM PKWY
    031 MONTGOMERY
    033 PRINCE GEORGES

FISH AND WILDLIFE SERV

1435 09318 19 9999 999 PATUXENT RESEARCH CENTE
    003 ANNE ARUNDEL
    033 PRINCE GEORGES

DEFENSE
NAVY

1700 23436 19 9999 999 AIR STATION
    009 CALVERT
    017 CHARLES
    033 PRINCE GEORGES
    037 ST MARYS

1700 23444 19 9999 999 LABORATORY BUWEPS
    031 MONTGOMERY
    033 PRINCE GEORGES

1700 23456 19 9999 999 PROPELLANT PLANT
    017 CHARLES
    033 PRINCE GEORGES

1700 24108 19 9999 999 APPLIED PHYSICS LAB
    027 HOWARD
    031 MONTGOMERY

1700 24109 19 9999 999 NAVAL RESERVE LAB
    009 CALVERT
    041 TALBOT

1700 24132 19 9999 999 PUB WORKS OFFICE DIST
    021 FREDERICK
    037 ST MARYS

1700 24311 19 9999 999 WEAPONS LABORATORY
    017 CHARLES
    037 ST MARY

1700 24395 19 9999 999 RESERVE TRAINING CENTER
    031 MONTGOMERY
    033 PRINCE GEORGES

DEFENSE
ARMY

2100 20036 19 9999 999 ARMY CHEM CTR
    005 BALTIMORE
    025 HARFORD

2100 21294 19 9999 999 NIKE WASH BALTO SITE 44
    017 CHARLES
    033 PRINCE GEORGES

16  36